Bank of Commerce vs. Elliott and another.

BANK OF COMMERCE, Appellant, vs. ELLIOTT, Respondent.
SAME, Appellant, vs. ELLIOTT and another, Respondents.
SAME, Appellant, vs. SAME, Respondents.

*March 2 — March 19, 1901.*

*Bankruptcy: Actions pending in state courts: Intervention of trustee: Jurisdiction: Discontinuance: Pleading discharge: Enforcement of liens: Garnishment: Costs: Appeal: Orders subsequent to judgment.*

1. An order having been made in bankruptcy proceedings in the federal court, directing the trustee under sec. 11b of the bankrupt act to intervene in a suit pending in a state court to which the bankrupt is a party, the latter court will be governed, in deciding an application to permit such intervention, by state laws and judicial policy.

Bank of Commerce vs. Elliott and another.

2. If such an application to intervene is denied, only a party actually aggrieved by the adverse decision can be heard on appeal therefrom; and the trustee cannot be so heard unless he shall have first applied to the state court, failed in his application, and appealed specially from the decision.

3. A discharge of a debtor in bankruptcy does not extinguish for all purposes a debt upon which it operates, so as to displace the jurisdiction of the state court in a pending action to enforce it. Notwithstanding the discharge, the cause of action to recover the debt continues, unless the bankrupt insists upon his discharge by pleading it in bar of further proceedings in the suit.

4. If a person is discharged from his debts in bankruptcy, pending a suit against him to recover a debt upon which such discharge operates:

(a) The plaintiff, by leave of court, and before answer setting up the discharge, may discontinue the action without costs, and will generally be permitted to do so;

(b) The suit may proceed to judgment notwithstanding the discharge, if the defendant does not, by a proper proceeding, insist upon it as a defense;

(c) Upon the defendant applying to the court for leave to plead his discharge in bankruptcy, the court may, as terms of granting such application, require a waiver of any costs up to the time of setting up the new defense;

(d) The right to plead the discharge in bankruptcy may be waived by unreasonable delay to the plaintiff's prejudice or by answering without setting up the discharge;

(e) If the defendant pleads his discharge as a defense to the plaintiff's claim, no terms being imposed, the cause will then stand for trial like any other. If the defendant recovers he will be entitled to costs the same as in other cases, and plaintiff will be entitled to costs if he recovers.

5. If a debt is discharged in bankruptcy pending an action in the state court to recover the same, and there is a lien created by law incident to such debt, a plea in bar of further proceedings in the case will not preclude the court from rendering such a judgment as may be necessary to enable the plaintiff to enforce the lien, if, notwithstanding the discharge, it is preserved by the bankrupt act.

6. The interest which the plaintiff in a garnishee action obtains in the property or credits of the defendant, by the due service of a garnishee process upon the person liable to such defendant as a debtor or custodian of his property, is a lien created by law within the meaning of the bankrupt act, and an action pending to recover an

indebtedness which has been discharged in bankruptcy, having a garnishee action incidental thereto, will survive the discharge and defense on that ground, so far as to permit a judgment in form against the defendant, enforceable as to the equitable lien secured in the garnishee action.

7. The defendant in an action to which a garnishee action is incident, in which issue has been joined, is a joint defendant with the garnishee in the latter action, and under circumstances coming within the last clause of sec. 2772, Stats. 1898, a judgment for costs may be rendered in favor of the two jointly.

8. Where a cause or action, existing at the time an action was commenced to enforce it, has been fully extinguished, the action cannot proceed for the mere purpose of the recovery of costs.

9. The principle last announced does not apply to the status of an action, to recover a debt after it has been discharged in bankruptcy, commenced before such discharge.

10. An appeal from a judgment will not bring up for review an order entered denying a motion to set the judgment aside and grant a new trial.

11. Where a judgment is reversed and a new trial granted, this court has discretionary power under sec. 2949, Stats. 1898, to direct that the costs taxed in this court in favor of the prevailing party shall abide the final result in the court below.

12. Where the amount in controversy, exclusive of costs, is only $3.11 and the party appealing fails to take such proceedings in the court below as will render it probable that in case of a reversal a more favorable judgment will be obtained than before, and a new trial is required, the costs taxed in this court in favor of the prevailing party will be made to abide the final result.

[Syllabus by MARSHALL, J.]

APPEALS from judgments of the circuit court for Douglas county; A. J. VINJE, Circuit Judge. *One judgment affirmed; the others reversed.*

A main and two garnishee actions. The main action was to recover on a promissory note of $200. Defendant *Elliott* pleaded that the debt, as to him, had been discharged in bankruptcy proceedings prior to the commencement of the action. The three actions were submitted to the court for determination at the same time, on a stipulation of facts of which the following is the substance:

The first garnishee action was commenced March 8, 1898. The *Northwestern Coal Railway Company* answered, disclosing an indebtedness to defendant *Elliott* of $57.50 for wages earned in February, 1898, and $17.50 for wages earned in March, 1898, up to the time of the commencement of the garnishee proceedings, and claiming that such indebtedness was exempt as *Elliott's* wages, he having a family dependent upon him for support. A second garnishee action was commenced December 9, 1898. The garnishee answered disclosing indebtedness to *Elliott* of $72.10 as wages earned in November, 1898, and $24.60 as wages earned in December up to the time of the garnishment. Issue was taken by plaintiff on the answer of the garnishee in each case. December 29, 1898, *Elliott* was adjudged a bankrupt in the United States district court for the Western district of Wisconsin. The indebtedness sought to be recovered in the main action, at the time of the commencement thereof, was due plaintiff as alleged in the complaint, and no part thereof had been paid, but *Elliott* was subsequently discharged therefrom in the bankruptcy proceedings. An order was entered in such proceedings, upon objection made to the discharge of *Elliott*, authorizing the trustee therein, George E. Dietrich, to prosecute the garnishee action, commenced by plaintiff, for the benefit of the bankrupt's estate. February 17, 1899, in the bankruptcy proceedings, there was duly set apart for *Elliott*, as exempt property, his wages prior to March 8, 1898, amounting to $71.89, held by the garnishee, and also $45.23 earned by *Elliott* and held by the garnishee in the second garnishee action, said amounts representing the balance of the bankrupt's earnings of $60 per month for three months before the dates of the respective garnishments, and not exceeding $180 in all for each of the garnishments. The amount earned by *Elliott* for the three months preceding the first garnishment was $183.11, and for the three months preceding the second garnishment $231.67. The amount left

after deducting $180 for each three months is $54.78.    The sum of $96.90 represents the amount earned by the bankrupt, held by the garnishee at the time of the second garnishment, December 9, 1898.    November 1, 1898, an order was drawn on the garnishee by defendant *John E. A. Elliott* requesting payment of his wages for November to James T. Elliott, which said order was accepted by the garnishee November 2, 1898.    December 10, 1898, $72.10 was paid upon said order. Thereafter James T. Elliott paid to defendant *Elliott* $50. James T. Elliott is a creditor of defendant *Elliott* and is represented in the bankruptcy proceedings.    No part of *Elliott's* earnings, mentioned as held by the garnishee, has been paid to the trustee in bankruptcy or paid into court.    Defendant *Elliott* is an unmarried man, but has a family dependent upon him for support.    He is entitled to $60 per month as exempt under the statute.    No judgment has been entered in this action against either of the defendants.

A bill of exceptions in each case shows that on the pleadings and the stipulation of facts motions were made by the plaintiff, in each of the garnishee cases, for an order making the trustee in bankruptcy a party to represent the estate. A motion was also made in the main action for a special judgment against *Elliott*, one not recognizing the existence of any personal liability but enforceable against the credits in the hands of the garnishee.    The motions were denied, and due exception was taken to each ruling.    A motion was made on behalf of defendant *Elliott* for a dismissal of the main action as to him, and a motion was also made in each of the garnishee actions to dismiss the same.    All of such motions were granted, due exception to each ruling being taken.    Judgment was thereupon entered in the main action, and subsequently costs were taxed and inserted therein, the amount being $24.63.    Papers are in the record on the appeal in such action, relating to subsequent proceedings as to costs, but they all relate to proceedings in

the garnishee actions. Judgment was entered in the first garnishee action dismissing the same and in form for costs in favor of *Elliott* and the garnishee jointly. Two cost bills were presented to the taxing officers and were taxed, one in favor of the garnishee defendant for $23.53, and one in favor of the defendant Elliott and the garnishee for $31.23. Only the smaller cost bill as taxed was entered in the judgment. Objection was made before the taxing officer to the taxation of any costs, also to the following items which were allowed by the clerk: $3 for attending trial; 50 cents for sheriff's fees on serving the summons. There was a further objection to the taxation of any costs in favor of the garnishee because, the answer being made under sec. 2760, Stats. 1898, admitting a liability, the only costs allowable to the garnishee were $3. The rulings of the clerk were duly presented to the circuit court for consideration on a motion for a review of the taxation of costs, and the motion was denied. A motion was made after judgment, for an order setting the same aside and granting a new trial, which was denied, but the appeal was taken from the judgment only.

In the second garnishee action, judgment was rendered in form for costs in favor of defendant *Elliott* and the garnishee. Two cost bills were presented to the taxing officer for taxation, one for $23.53 in favor of the garnishee defendant, and one for $31.23 in favor of defendant *Elliott* and the garnishee. Both were taxed, but only the larger bill was included in the judgment. Objection was made before the taxing officer as follows: To the taxation of any costs; to the taxation of any costs in excess of $3; to the following items which were allowed: $3 for attending trial, $2 for a term fee, 50 cents sheriff's fees for serving summons. The exceptions to the rulings of the clerk were duly presented to the court for consideration on a motion for a review of the taxation of costs, and the motion was denied.

A motion was made after judgment, based on affidavits, for an order setting it aside and granting a new trial, which was denied.   The appeal is from the judgment only.

Defendant *Elliott* neglected to plead his discharge in bankruptcy for several months after it was granted, and was then permitted to enter such plea in the main action, and in the second garnishee action, without the imposition of any terms.   After such plea was interposed plaintiff made no offer to discontinue either of the actions, and after the lapse of several months they were brought to a hearing mainly on the defense, as before indicated, of the discharge in bankruptcy.

For the appellant there was a brief by *Reed & Reed,* and oral argument by *Myron Reed.*

For the respondents there was a brief by *Arnold & Arnold,* and oral argument by *N. B. Arnold.*

MARSHALL, J.   It is claimed that the trial court erred, (1) in refusing to make the trustee in bankruptcy a party to the main action; (2) in refusing to award plaintiff a special judgment in such action; (3) in dismissing the actions or either of them; (4) in granting costs to defendant *Elliott* in the main action; (5) in granting full costs, or costs as taxed, to defendant *Elliott* and the garnishee defendant in the two garnishee actions; (6) in refusing to review the taxation of costs in each case; (7) in refusing to vacate the judgments and grant rehearings.   So far as necessary or deemed advisable we will consider each of such propositions.

1. Counsel insists that because sec. 11b of the bankruptcy act provides that in a proceeding under it the federal court may order the trustee to enter his appearance and defend any pending suit against the bankrupt, and the trustee in the matter of *Elliott's* bankruptcy was so ordered, the circuit court having the garnishee actions in question in charge was bound to give effect to such order by granting the mo-

tion to make him a party to such actions. That subject was before this court and was fully considered in *National D. Co. v. Seidel*, 103 Wis. 489. We there held, and now affirm, that the federal statute, however mandatory its terms, does not control the practice in state courts and was not intended to do so. If an order be made under it commanding a trustee to intervene in the state court in an action to which the bankrupt is a party, the former performs his full duty when he makes a proper application to such court to be let in to such action. In disposing of such application the statutes of the state, and the rules and practice of its court, must necessarily govern, the same as when any other party invokes the court's jurisdiction.

Testing the ruling of the court, refusing to make the trustee in bankruptcy a party to the garnishee actions, by state laws and judicial policy, we fail to see why the trustee had any interest in the action that required his presence therein for his due protection, or why the entire controversy in such action, as to the plaintiff, was not susceptible of a complete determination without the trustee being brought in. Therefore, sec. 2610, Stats. 1898, did not require the trial court to grant the motion, but left it free to exercise its discretion in respect thereto. If we say plaintiff acquired a right, by the commencement of the garnishee action, to hold the garnishee liable for some part of its indebtedness to *Elliott*, and that such right, by operation of law, was displaced by the right of the trustee in bankruptcy so as to bring the latter within the scope of sec. 2801, then it would follow that the action of the trial court could not be disturbed unless it clearly appeared that there was an abuse of judicial discretion. Granting or refusing a motion under that section is, by its terms, addressed to the sound discretion of the court. In any event, since, as will be hereafter seen, there was no controversy between the trustee and appellant as to who should have the benefit of the liability of

the garnishee to *Elliott,* appellant was not prejudiced by the denial of the motion to make the trustee a party and cannot be heard to complain of such denial on this appeal. Sec. 2829.

Again, regardless of the rights of the trustee under sec. 2801, Stats. 1898, appellant has no standing here to recover on the assignment of error under discussion, because the privilege was one to be asserted by the trustee. He did not appear in the court below and ask to be made a party, as we understand the record, nor is he a party to the appeal. If it were otherwise, the question as to the trustee could not be reviewed except by an appeal in his behalf, from the order refusing to make him a party. The appeal from the judgment does not bring up such a question. The trustee not being a party to the action, proceedings in his behalf to make him such would be special. *National D. Co. v. Seidel,* 103 Wis. 489.

2. Whether the court erred in refusing to give appellant judgment in form against *Elliott* obviously depends upon whether, after the discharge in bankruptcy and the entry of the plea by *Elliott* in bar of further prosecution of the main suit as to him, appellant had a cause of action in any sense upon which a judgment could be rendered. It is conceded that if a defendant is discharged in bankruptcy from a debt, pending proceedings to enforce it, he is entitled to plead such circumstance in bar of further proceedings for a personal judgment, if the plaintiff does not voluntarily discontinue the action, and to recover on such plea. But it is said that if an action is wholly *in rem,* or partly *in rem* and partly *in personam,* its status as an action to reach the *res* is not disturbed by a discharge of the defendant in bankruptcy, if the plaintiff's interest therein be preserved by the bankrupt act. The authorities seem to be uniform to that effect. *Roberts v. Wood,* 38 Wis. 60; *Bates v. Tappan,* 99 Mass. 376; *Bowman v. Harding,* 56 Me. 559; *Leighton v. Kelsey,* 57 Me.

85; *Ingraham v. Phillips*, 1 Day, 117; *Jones v. Lellyett*, 39 Ga. 64; *Pierce v. Wilcox*, 40 Ind. 70; *Stoddard v. Locke*, 43 Vt. 574; *May v. Courtnay*, 47 Ala. 185; *Kittredge v. Warren*, 14 N. H. 509; *Munson v. B., H. & E. R. Co.* 120 Mass. 81. In *Bowman v. Harding*, it was insisted on behalf of the discharged party that he was, by the express terms of the bankrupt act, released from all his debts, and that no such discharged debt could, by implication, be considered to have sufficient life to form the basis of a judgment even in form against him. The court thought otherwise, reasoning that the language of the bankrupt act, preserving a lien incident to a debt, by implication preserved the debt notwithstanding its discharge, so far as necessary to make the lien effective. Treating of the same subject, in *Leighton v. Kelsey*, *supra*, the court said, in substance, the provisions of the bankrupt act are not to be construed so as to preclude the rendition of such a judgment as is necessary to enable a lien claimant, whose interest in property is preserved to him by the act, to perfect and realize upon it. In *Bates v. Tappan* this language was used:

"The provisions for a full discharge . . . must be construed, as they well may be, so as not to prevent the enforcement of a lien, which the statute itself permits, by any requisite proceedings therefor which do not involve a judgment *in personam*. A lien by attachment can be enforced in no other way than by the qualified judgment which was rendered in the superior court, and it must therefore be affirmed."

The present bankrupt act has the same features as the act of 1867 which were the foundation of the adjudications cited. It provides that "all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt," etc. Sec. 67, subd. f. The language as clearly, by

implication, preserves all liens claimed in legal proceedings, of sufficient age to be outside the four-months limit, as it expressly annuls those within such limit. The preservation of certain liens necessarily left the lien claimants free to pursue the necessary legal or equitable remedies to render them effective. So we must next inquire whether appellant, by virtue of the garnishee actions, or either of them, possessed a lien, within the meaning of the bankrupt act, which was in existence at the time the motion for a special judgment against defendant *Elliott* was made, entitling plaintiff to such a judgment, in order to render such lien effective.

3. We understand that it is not claimed that appellant acquired any lien in the second garnishee action that was not superseded by the rights of the trustee in bankruptcy, and annulled effectively for the purposes of the action by *Elliott's* plea therein of his discharge. In any event that is the situation disclosed by the record. It was to obtain the indebtedness of the garnishee involved in that action for the benefit of the bankrupt's estate that the motion was made to let in the trustee as a party in place of *Elliott*. In the first garnishee action it is claimed by appellant's counsel and apparently not denied by respondents' counsel, that the garnishee was liable to the extent of $3.11. That appears to be the truth of the situation, and we so hold. So the learned counsel for appellant have some standing in court upon which to present their claim that it was entitled to a special judgment. So we must determine the character of the liability of a garnishee within the meaning of the bankrupt act so as to say whether it may survive a discharge of the debt to which it is incident.

It is clear that under our statutes a garnishment does not create a lien, strictly so called, on the property of the principal debtor in the hands of the garnishee. The interest obtained is of an inchoate character. It does not reach the

property so as to constitute an actual interest therein, though it is true that such interest has been commonly called, by this and other courts, an equitable lien. The plaintiff cannot follow the property on the strength of any legal or even equitable interest therein, from the mere fact of the service of the garnishee process, but can control the property by seasonably acting to that end and thereby put the court in possession of the *res*. The mere service of a garnishee summons is, however, said to be an equitable levy on the property of the principal defendant in the hands of the garnishee, and fastens upon him the status of a trustee for the plaintiff, rendering him liable to account as such or suffer a judgment against him as provided by law. *Globe M. Co. v. Boynton*, 87 Wis. 619; *Maxwell v. Bank of New Richmond*, 101 Wis. 286. In the latter case it was held that the lien of a plaintiff in a garnishee action, on the property of his debtor in the hands of the garnishee, being purely equitable, since an appeal from a judgment in favor of the latter does not of itself operate as a *supersedeas* if an order is not seasonably entered continuing the equitable lien created by the service of the garnishee process pending the appeal, it will be irretrievably lost if the garnishee chooses or is compelled to part with the property prior to a reversal or if he is in any way bound, prior thereto, to answer to some other person who *bona fide* acquires the right. Other courts have held the same. *Webb v. Miller*, 24 Miss. 638. So the word "lien," in the bankrupt act, does not include the mere liability of a garnishee, unless it was used in the particular sense of all interests of one person in the property of another, whether legal or equitable, or whether equitable in the sense of being an actual or mere inchoate interest in the thing, whether tangible or intangible.

In properly determining the question of whether the word "lien" was used in the bankrupt act in a restrictive or broad sense, it is important to know whether the act should be con-

strued strictly or liberally. If we say a strict construction should be given thereto, there would be strong reason for saying that Congress had in view actual interests at least in property, not a mere right to acquire an interest or a right to hold a person liable to account as trustee. Without resorting to authority, it would seem that the bankrupt act should have a liberal construction under the general rule that obtains in construing remedial legislation, for that is obviously its character. The federal courts have so viewed the act, saying, in effect, that bankrupt laws existed long before the adoption of the constitution; that the intent thereof has always been to accomplish justice between debtors and creditors; that the power to legislate in that field is one of the important granted powers of the national government, and that a law passed in the exercise of such power should be regarded as purely remedial in character and be construed according to its spirit, with a view to effect its objects and to promote justice. *In re Muller*, Deady, 513. To the same effect are many decisions holding that the policy of the bankrupt act is as much to uphold certain liens as it is to annul others. Bump, Bankruptcy (11th ed.), 786.

Coming now to the question of whether a liberal construction of the word "lien," as it is used in the bankrupt act, can reasonably extend it to include a special interest of so shadowy a character that it does not attach to any particular thing, as does such an equitable interest as a mortgage, but only enables the court to act upon the party holding the *res*, we must look at the matter in the light of the commonly accepted character of the right of a plaintiff in garnishee proceedings and the name such right has commonly borne.

The courts have uniformly said, as before indicated, that the service of a garnishee process is an equitable levy upon the property of the debtor in the hands of the garnishee, and that the interest thereby obtained in such property is at least in the nature of an equitable lien, and has been com-

Bank of Commerce vs. Elliott and another.

monly called a lien. In many cases it has been called a lien without qualification, in others an equitable lien, and in some a mere inchoate or incipient lien,— the mere commencement of proceedings to obtain a lien in fact. While the property is not *in custodia legis* in the sense of being in the actual control of the court, it is subject to such control because the court has power to possess itself of the *res* or to render a judgment for the value thereof against the garnishee. So the plaintiff in a garnishee case, as it seems, does acquire a special interest, even in a mere indebtedness of the garnishee to the defendant, denominated a lien, regardless of the diversity of opinion as to its real character. It is sufficient for this decision to reach the conclusion that it has been commonly called a lien, and may reasonably be so called, using the term in a qualified sense. The following cases treat the subject in its various phases: *North Star B. & S. Co. v. Ladd,* 32 Minn. 381; *Hawes v. Mooney,* 39 Conn. 37; *Hacker v. Stevens,* 4 McLean, 535; *Wallace v. McConnell,* 13 Pet. 136; *Cahoon v. Morgan,* 38 Vt. 234; *Wilder v. Weatherhead,* 32 Vt. 765. Some of the above authorities are to the effect that a garnishee levy creates a specific lien. Others are directly to the contrary. To the former view the following are more directly in point than any cited: *Focke v. Blum,* 82 Tex. 436; *Reed v. Fletcher,* 24 Neb. 435. The latter view is as firmly maintained in *Bigelow v. Andress,* 31 Ill. 322; *McGarry v. Lewis C. Co.* 93 Mo. 237; *McConnell v. Denham,* 72 Iowa, 494. Cases where the conflict is thus sharp, refer to specific property, not to mere indebtedness. As to the latter, the authorities are quite uniform that nothing in the nature of a specific lien is obtained by the commencement of garnishee proceedings, though a special right is acquired in the nature of an equitable lien.

So much as a general and original treatment of the question. But we are not wholly without guidance on the precise point at issue. In *In re Peck,* decided in the United

Bank of Commerce vs. Elliott and another.

States district court for Vermont, 16 N. B. R. 43, it is said that the service of a garnishee process creates a lien within the meaning of the bankrupt act, saving liens created by law within four months of the filing of the petition in bankruptcy. *Stoddard v. Locke*, 43 Vt. 574, is referred to, where it was held that the service of a garnishee process creates an inchoate lien and a lien within the meaning of the bankrupt act, and that if it is of sufficient age to be preserved notwithstanding a discharge of the debtor and a plea by him in bar of further proceedings in the action to which the garnishee proceeding is incident, such discharge and plea are effective only to prevent the enforcement of any personal liability in such action, but, such a judgment as is necessary to be rendered to perfect and enforce the equitable levy in the garnishee proceedings, the plaintiff is entitled to as a matter of right.

From what has been said it appears that the trial court erred in dismissing the action against *Elliott*. Plaintiff had a lien within the meaning of the bankrupt act, almost trifling in amount to be sure, but yet it was large enough to be entitled to some recognition here, possibly only because of the question of costs that depended upon it. Otherwise it would be quite likely to fall within the maxim, *De minimis non curat lex*. As the case stands here, it does not appear that appellant is entitled to any relief that is within the discretionary power of the court to grant or refuse. We cannot consider it a sufferer to any extent but what might easily have been prevented. The question of whether it was entitled to any judgment whatever, as to *Elliott*, in face of the plea in bar and the admission of the truth of its allegations, was manifestly new to the trial court, as it was to counsel on both sides. The question involved a field where there has been no call for exploration till recently, within a period covering the professional career of many lawyers and judges of the present. Without the benefit of more time for the

study of the subject than a trial judge can ordinarily devote
to such a matter, if left to reach a conclusion unaided by
counsel, from the language of the bankrupt act alone, to the
effect that a discharge in bankruptcy extinguishes every
mere debt against the bankrupt and enables him to set up
his discharge thereof in bar of any suit thereon whether com-
menced before or subsequent to such discharge, one would
very reasonably reach the same conclusion that the learned
trial court did in this case.   He received no help from au-
thorities, we must assume, though there were many to draw
from under the bankrupt acts of 1867 and 1841.   We feel
warranted in saying this because, with the labor which coun-
sel for appellant put upon the case in preparing it for this
court, which we may assume was more thorough than that
devoted to the enlightenment of the trial court, none of the
numerous authorities on the subject are cited to our atten-
tion in the printed brief.   We are therefore warranted in
saying that the expensive litigation over the small amount
of $3.11 and the incidental costs might easily have been
avoided, and very little of the fault that it was not, if any,
lies at the door of the learned trial judge.   So much we have
been called upon to say in the interest of a careful presenta-
tion of cases to trial courts, not intending to unduly reflect
upon the learned counsel for appellant, whose record, gen-
erally, for careful preparation and presentation of cases,
needs no vindication here or elsewhere.   We are glad to be
informed, however, that the three appeals before us, with
the large amount of expenses involved, have for their pur-
pose, not the recovery of $3.11 and some costs, but the vin-
dication of a principle.

The basis of the dismissal of the garnishee action with
costs was that the principal defendant had recovered judg-
ment in the main action.   The statute provides that when
the garnishment shall not be in aid of an execution, no trial
shall be had of the garnishee action until the plaintiff shall

have judgment in the principal action, and if the defendant shall have judgment the garnishee action shall be dismissed with costs.   As we have found that the judgment against plaintiff must fall, the others, if they have no other basis than that to rest upon, must fall also.   Judgment in the principal action is, as it appears, the sole basis at least for the judgment in the second garnishee action.   That was commenced within the four months preceding the filing of the petition in bankruptcy, so whatever right was acquired by such commencement was subsequently superseded, as before stated, by the right acquired by the trustee in bankruptcy.   So the dismissal of the second garnishee action was right, but the dismissal of the main action was wrong, and likewise that of the first garnishee action.

4. From what has been said it is manifest that the trial court erred in granting costs to defendant *Elliott* in the main action.   But not upon the ground that there was no cause of action left after the discharge in bankruptcy, so as to bring the case within the rule in *Two Rivers Mfg. Co. v. Beyer*, 74 Wis. 210.   The contention of appellant's counsel on that point cannot be sustained.   True, as stated in the case cited, costs are incident to a judgment rendered on a cause of action, and after such cause has been extinguished the basis for the incident no longer exists, and it is error to allow further proceedings in the action merely to give a party thereto an opportunity to enter a judgment for costs. But a cause of action to recover a debt is not for all purposes wholly extinguished by a discharge in bankruptcy. That, like a completed period under a statute of limitations, extinguishes the debt upon which it operates only in case it is insisted upon at a proper time and in a proper way.   Notwithstanding a discharge in bankruptcy of a debt, it may be given new life by a new promise, or it may be deemed to exist regardless of the discharge if such discharge be expressly or by implication waived.   The discharge does

not interfere with the jurisdiction of the court. It merely furnishes the defendant with a defense which he may use or not as he sees fit, it being essential to such use that the defense be pleaded like any other. It cannot be made available upon mere motion. *Fellows v. Hall*, 3 McLean, 487; *Nat. Bank v. Taylor*, 120 Mass. 124; *Manwarring v. Kouns*, 35 Tex. 171; *Horner v. Spelman*, 78 Ill. 206; *Seymour v. Browning*, 17 Ohio, 362. A court may for good cause even refuse to allow a discharge to be set up by amendment or by supplemental answer. *Falkner v. Hunt*, 76 N. C. 202; *Medbury v. Swan*, 46 N. Y. 200. The right to insist upon the discharge is purely a personal privilege. A garnishee is not bound to insist upon it in the garnishee action for the protection of the principal defendant, though he may do so. *Frasier v. Banks*, 11 La. Ann. 31. If the plaintiff act seasonably, after being informed of the discharge of his adversary in bankruptcy, he may discontinue his action and without costs, by permission of the court, which will ordinarily be granted. *Camp v. Gifford*, 7 Hill, 169. By omitting to do so and forcing the defendant to plead his discharge as a defense, he can no more thereafter be permitted to discontinue without at least paying costs from and after the introduction of the new defense, than in any other case. No one would claim that a plaintiff can discontinue as a matter of right without payment of costs, on the coming in of an answer setting up the statute of limitations, or that if a person recover on such a defense he is any the less entitled to costs under the statutes that award costs to the defendant in all cases where plaintiff is not entitled thereto, than where he prevails on the defense of payment or any other defense sufficient to defeat the plaintiff's cause of action. In this case plaintiff neglected to discontinue, so *Elliott* was compelled to answer, setting up his discharge as a defense. For aught he knew appellant's neglect to discontinue was based on some claim that the

Bank of Commerce vs. Elliott and another.

discharge was ineffectual or would not be insisted upon. That being the case, there was still a cause of action before the court for adjudication, the determination of which would support a recovery of costs in favor of the prevailing party. The measure of costs recoverable by defendant, as to whether full or only costs from the time of interposing the discharge in bankruptcy as a defense, was under the control of the court in the exercise of its discretionary power, till waived by the indulgence of appellant's counsel. It appears that the time for answering expired long before the answer was tendered. It is quite likely that if appellant's counsel had stood upon their rights and compelled defendant to apply to the court for leave to answer setting up his discharge, a mere suggestion to the court of the propriety of doing so would have been sufficient to secure terms waiving all costs by defendant prior to the time of being granted leave to answer. No terms having been imposed, after the answer was served the case stood the same as any other. Appellant, on the face of the pleadings, was entitled to full costs in case it recovered, and if it failed, defendant was entitled to costs on the same basis as appellant would otherwise be entitled to. Secs. 2920, 2921, Stats. 1898. When the case was finally submitted, as before indicated, plaintiff was entitled to a special judgment against *Elliott*. Therefore, there was no room for a judgment for costs in the latter's favor.

5. What has been said renders consideration of the errors assigned in regard to the allowance of costs in the main and first garnishee actions unnecessary. Some attention, however, is required to the errors assigned as to the allowance of costs in the second garnishee action. The question of costs was not governed by sec. 2762. That provides that where there is a disclosure of indebtedness to the principal defendant, the garnishee may pay the same over to the clerk of the circuit court, less three dollars which he may

retain for his costs. That section contemplates a cause where no issue is tendered for trial. Issue was tendered in this case, and was accepted and duly joined, so that the cause stood for trial like any other action under sec. 2766, which gives costs to a garnishee defendant whenever judgment is rendered in the action in favor of the defendant. Costs were not governed by subd. 15 of sec. 2982, for the recovery was not based on the plea that the indebtedness was exempt. As defendant here was not entitled to judgment for reasons that have been stated, costs were not governed by the first part of sec. 2772, which provides that "in case of the trial of an issue between the plaintiff and any garnishee costs shall be awarded to the plaintiff and against the garnishee, in addition to his liability, if the plaintiff recover more than the garnishee admitted by his answer; and if he do not, the garnishee shall recover costs of the plaintiff," because that fits the situation where there is a recovery of something by the plaintiff on a contest. We have now referred to all specific cases where costs are provided for. The costs recoverable in this case seem to be governed by that part of sec. 2772 which reads as follows: "In all other cases under this chapter, not expressly provided for, the court may award costs in favor of or against any party in its discretion."

Appellant neglected to take a dismissal of the garnishee action as it might have done after the discharge in bankruptcy was brought to its attention. To obtain such dismissal *Elliott* was compelled to plead his discharge in bar of the main action and he also felt compelled to plead the same fact in the garnishee action. Appellant had some four months after the discharge before the plea in bar was interposed, within which it might have discontinued. It allowed over a year to elapse thereafter before the hearing, without attempting to discontinue. Defendant, in behalf of himself and the garnishee, was compelled to bring the

cause to trial. Upon the admitted facts he was entitled to and did recover. In that situation we cannot say there was any abuse of discretion in awarding costs jointly to him and the garnishee, to be taxed and allowed by the statutory fee bill.

The objection that costs were awarded jointly is untenable. Sec. 2766, Stats. 1898, provides that the proceedings against the garnishee shall be deemed an action by the plaintiff against the garnishee and the defendant as parties defendant. The defendant having answered as he had a right to do, and borne the burden of the litigation, the judgment for costs was very properly awarded in his favor as well as in favor of the garnishee.

6. We do not find that the objections to the few small items that were allowed in the cost bill are entitled to favorable consideration or call for any discussion.

7. In any view of this case counsel's last proposition need not be considered. In that, complaint is made because plaintiff's motion to set aside the garnishee judgments and for rehearings was not granted. The appeal being from the judgments, the subsequent orders are not reviewable. We have a statute enabling the court to review certain intermediate orders on appeal from the judgment (sec. 3070, Stats. 1898), but none allowing a review on such an appeal of an order entered after judgment. Such an order must be presented by an appeal therefrom, though such appeal may be joined with one from the judgment. Sec. 3049, Stats. 1898; *Leary v. Leary,* 68 Wis. 662; *Second Nat. Bank v. Larson,* 80 Wis. 469.

Now we have reached a point where it is seen that the judgment in the second garnishee action must be affirmed and the other two judgments reversed. But inasmuch as it does not appear that the equitable levy on the $3.11, which all this litigation is about, aside from costs and the more important matter of vindicating the principle involved

Bank of Commerce vs. Elliott and another.

(we do not lose sight of that), was preserved pending this appeal, it is difficult to see how appellant has any reasonable certainty of any satisfaction in the end, except what will flow from such vindication. We cannot remand the cause with directions for judgment in the court below. The equitable levy was extinguished by the judgment dismissing the garnishee action, and if in the meantime the indebtedness involved has been discharged, a reversal of the judgment will not revive the levy. So we must remand the cause for a new trial with directions that, if, prior to the reversal, the garnishee shall have paid the indebtedness sought to be reached, it shall be permitted to plead that fact as a defense to further proceedings against it; and that the defendant also shall have a like privilege in the main action, because, without a revival of the lien, so called, there will be no basis for a special judgment, and in that event the final result will be a second dismissal of both actions. It seems that in this situation the court should use the discretionary power vested in it by sec. 2949, Stats. 1898, awarding costs to the prevailing party to be taxed by the clerk of this court, but to abide the final result in the court below.

*By the Court.*— The judgment appealed from in the main action is reversed, and the cause remanded for a new trial with directions to permit defendant to plead payment of the indebtedness sought to be reached in the garnishee action subsequent to the dismissal thereof, the costs of the prevailing party to be taxed and allowed in this court, but to abide the final result in the court below, and if plaintiff prevails there, such costs to be allowed in such court as disbursements. The judgment appealed from in the first garnishee action is reversed, and the cause remanded for a new trial with directions to permit the garnishee to plead, in defense of further proceedings, payment of the indebtedness sought to be reached subsequent to the dismissal, the costs of the prevailing party taxed and allowed in this court

to abide the final result in the court below, and if plaintiff prevail there, such costs to be taxed in its favor as disbursements. The judgment in the second garnishee action is affirmed with costs in favor of respondents in this court.