[Civ. No. 1547.   Third Appellate District.—September 19, 1916.]

# BEN E. TORMEY, Appellant, v. FRANK N. MILLER, Respondent.

ATTACHMENT—RELEASE—SUBSEQUENT BANKRUPTCY OF DEFENDANT—
ENTRY OF QUALIFIED JUDGMENT—LIABILITY OF SURETIES—RIGHT OF
PLAINTIFF.—Where in an action for goods sold and delivered the
property of the defendant is attached and afterward released upon
the giving of an undertaking conditioned that if the plaintiff should
recover judgment the sureties upon demand would pay the amount
thereof, the plaintiff is entitled, where the defendant by way of sup-
plemental answer sets up his adjudication and discharge in bank-
ruptcy since the commencement of the action, to have a special or
qualified judgment entered against the defendant with a perpetual
stay of execution, for the purpose of enforcing the liability of the
sureties on the undertaking.

ID.—PROCEDURE—MOTION FOR ENTRY OF QUALIFIED JUDGMENT AT CLOSE
OF TRIAL.—Under such circumstances, it is proper procedure to enter
such a judgment upon motion made at the conclusion of the trial of
the issues raised by the original pleadings and supplemental answer.

ID.—PLEADING — ATTACHMENT AND RELEASE — EVIDENTIARY MATTERS.—
Under such circumstances it is not necessary to the entry of the
judgment against the defendant, for the special purpose of fixing
and enforcing the liability of the sureties on the undertaking, that
the plaintiff should plead the issuance of the writ of attachment,
its levy, the giving of the undertaking for the release, or the release
of the property, as the same are purely evidentiary matters.

ID.—APPEAL FROM JUDGMENT—REVIEW OF ERRORS OCCURRING DURING
TRIAL.—In such an action alleged errors in excluding proof of the
issuance of the writ of attachment and the execution of the under-
taking are reviewable upon appeal taken from the judgment, where
the appeal was taken after the abrogation by the legislature of 1915
of the right to appeal from an order denying a new trial (Stats. 1915,
p. 209).

APPEAL from a judgment of the Superior Court of
Butte County.  H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

Milton Newmark, and Clarence A. Shuey, for Appellant.

Lon Bond, for Respondent.

HART, J.—The defendant in this action was awarded judgment, from which this appeal, supported by a bill of exceptions and a stipulation admitting as true certain facts, is prosecuted by the plaintiff.

The facts as agreed upon by the stipulation of the parties are with accuracy synoptically stated in the opening brief of counsel for the plaintiff, and we, therefore, adopt said statement thereof, together with the statement of the legal propositions submitted here for decision by the appellant.

"Appellant brought an action in the superior court of this state for Butte County, against respondent, for goods sold and delivered. A writ of attachment was issued in said action directed to the sheriff of Butte County and placed in his hands for execution. A bond was thereafter made, executed and delivered, and thereupon the attachment was released and discharged. By the obligation of said bond, the sureties undertook 'that if the said plaintiff shall recover judgment in said action we will pay to the said plaintiff upon demand the amount of said judgment together with the costs not exceeding in all the sum of $1200, gold coin of the United States.'

"Thereafter, and within four months of the commencement of the attachment suit, respondent filed a petition in the District Court of the United States for adjudication as a voluntary bankrupt, and thereafter was duly adjudged a bankrupt and discharged of his debts by order of said District Court. Respondent filed a supplemental answer in the attachment suit, setting up his discharge in bankruptcy as a defense. Upon these issues the case was tried, and at the trial counsel for plaintiff, in his opening statement, told the court that he proposed to ask for judgment against the defendant with a perpetual stay of execution against the property of said defendant for the purpose of maintaining his rights against the bondsmen.

"The allegations of the complaint in regard to the incurring of the indebtedness sued upon and non-payment were admitted by stipulation of counsel for respondent. The bankruptcy proceedings culminating in the order of discharge were also admitted by stipulation, and this constituted the sole defense interposed to the action. Plaintiff offered evidence establishing the facts in regard to the issuance of the writ of attachment, the execution and delivery of the under-

taking, which evidence was excluded by the trial court upon defendant's objection that it was incompetent, irrelevant and immaterial. The bond was also offered and similarly excluded. At the conclusion of the trial plaintiff again asked for judgment against defendant with a perpetual stay of execution against the property of said defendant. Judgment went for defendant. The question of law thus presented and raised by the exclusion of the testimony in regard to the issuance of the attachment and the execution of the bond and also by the absolute judgment in favor of the defendant, relates to the right of a plaintiff under such circumstances to a qualified judgment against the defendant sufficient to preserve his rights against the sureties arising out of the bond given to release the attachment. By the terms of the bond, recovery of a judgment is made a prerequisite to an action against the sureties.''

It is not questioned but, indeed, is admitted by the stipulation of counsel for the defendant, that but for the special plea setting up by way of supplemental answer the fact of the defendant's discharge from his debts under the federal bankruptcy law, the plaintiff would have been entitled to judgment against the defendant for the amount of the debt sued for. By reason of the adjudication in bankruptcy, however, the defendant's property could not, obviously, be resorted to in execution or satisfaction of any judgment obtained against him by the plaintiff or, for that matter, by any other person suing upon an obligation created prior to and consequently affected by the adjudication. But, as seen, the plaintiff contends that the effect of the defendant's discharge in bankruptcy was not to destroy his rights originally created by the lien of the attachment, or, speaking with respect to the case as it appears, his rights against the sureties on the undertaking given to discharge the attachment levied upon the property of the defendant to secure his judgment.

The contention so urged is clearly in harmony with the construction placed by the courts upon certain provisions of the bankruptcy law. Indeed, counsel for the defendant does not combat or dispute the soundness of the proposition, but, as we shall presently see, bases his resistance to this appeal solely upon grounds involving procedure.

Section 67d of the federal bankruptcy law provides: ''Liens given or accepted in good faith and not in contempla-

tion of or in fraud upon this act, . . . shall not be affected by this act.''

Section 16 of said act reads: ''The liability of a person who is a codebtor, or guarantor or in any manner surety for, a bankrupt shall not be altered by the discharge of such bankrupt.''

The courts have uniformly held, in cases like the present, that, under the foregoing sections, while the adjudication, when pleaded, will, of course, have the effect of granting immunity to the defendant from the execution of any judgment obtained against him from his property, such adjudication cannot operate to destroy the rights of the plaintiff under the undertaking given to release the attachment, or, in other words, will not itself relieve the sureties on the undertaking of their obligations thereunder. (See *Bank of Commerce* v. *Elliott,* 109 Wis. 648, [85 N. W. 417] ; *Hill* v. *Harding,* 130 U. S. 699, [32 L. Ed. 1083, 9 Sup. Ct. Rep. 725], and cases therein cited; *Smith* v. *Lacey,* 86 Miss. 295, [109 Am. St. Rep. 707, 38 South. 311] ; *United States Wind Engine & Pump Co.* v. *North Penn. Iron Co.,* 227 Pa. St. 262, [75 Atl. 1094] ; *Rosenthal* v. *Nove,* 175 Mass. 599, [78 Am. St. Rep. 512, 56 N. E. 884].) The principle is discussed and approved in *Harding* v. *Minear,* 54 Cal. 502, and *Holloday* v. *Hare,* 69 Cal. 515, [11 Pac. 28]. As was said by the supreme court of Wisconsin, in *Bank of Commerce* v. *Elliott,* 109 Wis. 648, [85 N. W. 417] : ''The language of the bankrupt act, preserving a lien incident to a debt, by implication preserved the debt, notwithstanding its discharge, so far as is necessary to make the lien effective.''

The above cases further hold that where, under such circumstances as are present in the case at bar, the defendant has pleaded and proved his discharge after the attachment had been levied upon his property and said attachment released upon the giving of the undertaking, the remedy of the plaintiff against the sureties on the undertaking must be made effectual, if at all, by the entry of a qualified judgment against the defendant for the amount found to be due on the account declared upon; that is to say, that, in order to enable the plaintiff to reap the benefit of his attachment, which can be obtained in this case only by proceeding against the sureties on the undertaking upon the giving of which said attachment was dissolved, he is entitled to have a judgment

entered against the defendant with a perpetual stay of execution, so as to prevent the plaintiff from enforcing the judgment against him, and leave him at liberty to proceed against the sureties. (*Smith* v. *Lacey,* 86 Miss. 295, [109 Am. St. Rep. 707, 30 South. 311], and the other cases above cited.)

As has been shown, in the present case, the undertaking given for the release of the attachment provided, as a condition precedent to the right of the plaintiff to a recovery against the sureties thereon or to maintain an action against them on the undertaking, that a judgment shall have first been rendered and entered against the defendant. Indeed, it is obviously true that, if no judgment in the attachment suit were entered against the defendant, there would be no predicate for the support of an action against the sureties, the obligation of the latter being to pay the debt only when it should be established by a judgment.

Excerpts from the opinions in a few of the cases above referred to will be sufficient to disclose the reasons for or the theory of the rules above considered.

In *Danforth Mfg. Co.* v. *Barrett & Co.,* 138 Ill. App. 244, which was concerned with an action commenced in a justice's court, judgment was rendered against the defendant, who appealed, giving an appeal bond with surety conditioned for the payment of any judgment obtained against the defendant, if the latter defaulted in the satisfaction of the same, it is said: "It is admitted in argument by appellant that it is proper for a trial court to enter a judgment against a defendant with a perpetual stay of execution in order that the plaintiff in said judgment may enforce the same against the sureties on a bond given upon an attachment levied more than four months prior to the bankruptcy of the defendant, as held in *Hill* v. *Harding,* 116 Ill. 92, [4 N. E. 361], and *Hill* v. *Harding,* 130 U. S. 699, [32 L. Ed. 1083, 9 Sup. Ct. Rep. 725]. But it is contended . . . that this rule should not be applied where the plaintiff or claimant has acquired no lien under his judgment; and that there should be no judgment against the appellant in this case because the sureties on the appeal bond are not liable.

"On this record the sureties on the appeal bond are not before the court, and we cannot determine their rights and liabilities. It will be time enough to determine the question

of their liability when a proper case is presented for our consideration involving that question.

"In view of this question of the liability of the sureties on the appeal bond—a question not necessary for us to decide and which we do not decide—the proper judgment in this case is a special judgment against appellant for the amount due to appellee with a perpetual stay of execution. Such a judgment against appellant can work no harm to it, and will not interfere with any rights or privileges acquired by its discharge in bankruptcy."

In *United States Wind Engine & Pump Co.* v. *North Penn. Iron Co.,* 227 Pa. St. 262, [75 Atl. 1094], the supreme court reversed the judgment, with directions to enter a special judgment against the defendant, with a perpetual stay of execution, for the purpose of enabling the plaintiff to proceed against the surety upon a bond given to secure the release of an attachment levied upon the property of the defendant. The court there said: "The appellee has secured its discharge in bankruptcy, and its personal liability is gone; but that does not constitute any reason why a judgment against it should not be entered for the special purpose of fixing and enforcing the liability of the surety. The surety took the risk of the appellee's insolvency—a risk that the appellant was supposedly protected against by the very bond in question. So it would be most unfair to allow the substitution of the bond for the goods attached, and then to deny the formal relief necessary in order to enforce its terms against the surety. There is nothing in our law, or practice, or in the announced public policy of the state, to require such a ruling."

Further quotation is not necessary, it being sufficient to say, as we have before declared, that all the other cases above cited are to the same effect.

It is true that section 67c of the Bankruptcy Act provides that a lien arising from the attachment of a debtor's property and so created within four months before the filing of a bankruptcy petition by the litigant debtor shall be dissolved by the adjudication of such debtor to be a bankrupt, if: "1. It appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference; or 2. The party or parties to be benefited thereby had reasonable cause to believe the

defendant was insolvent and in contemplation of bankruptcy; or 3. That such lien was sought and permitted in fraud of the provisions of this act." It is asserted in the brief of appellant that the bankruptcy proceedings in the case at bar were instituted within four months after the levy of the attachment. We find nothing in the record justifying this statement, hence we do not know when, with respect to the time at which the attachment lien was created, the proceedings in bankruptcy were commenced by the defendant. But it is altogether immaterial whether the attachment lien in this case was created within four months prior to or within four months after the commencement of the bankruptcy proceedings, since the attachment had, by virtue of the undertaking, been dissolved before the proceedings in bankruptcy were begun. As seen, the bond or undertaking was given for the express purpose of effecting a release of the attachment, the attachment was accordingly released, and such release operated as a sufficient consideration to support the obligation of the bondsmen. It has repeatedly been held that the bondsmen are, under such circumstances, liable. (*Rosenthal* v. *Perkins*, 123 Cal. 240, [55 Pac. 804]; *San Francisco Sulphur Co.* v. *Aetna Indemnity Co.*, 11 Cal. App. 695, [106 Pac. 111]; *In re Maaget*, 173 Fed. 232, [23 Am. Bankr. Rep. 14]; *McCombs* v. *Allen*, 82 N. Y. 114; *King* v. *Will J. Block Amusement Co.*, 126 App. Div. 48, [111 N. Y. Supp. 102].)

The Rosenthal case involved an action against the sureties on an undertaking given to release an attachment. The defendant in the attachment suit, one Brusie, had the attachment released upon giving an undertaking for that purpose. Within a month after the levy of the writ of attachment, Brusie filed his voluntary petition in insolvency under the State Insolvency Act of 1880. That act contained a provision that the effect of the commencement of insolvency proceedings was to dissolve any attachment levied within one month next preceding the commencement thereof. The defendants (sureties on the bond) contended that "the effect of this provision was to dissolve the attachment in *Rosenthal* v. *Brusie*, and render impossible the return of the released property to the attaching officer, and hence to destroy the obligation of their undertaking." After showing that the contract involving the undertaking embodied two alternative promises, viz., that the released property would be re-

delivered and applied toward the satisfaction of the judgment, or the sureties would pay the value thereof, not exceeding the amount of the judgment, and that if an agreement is in the alternative, and one branch of the alternative cannot by law be performed, the party is bound to perform the other," the court said: "It is clear, for reasons which need not be enlarged upon, that if at the time the proceedings in bankruptcy is instituted there is no attachment in force on which the proceeding can operate, if the attachment lien has already been discharged by a bond for that purpose, then the liability of sureties on the bond is not affected by the subsequent bankruptcy of their principal. (*McCombs* v. *Allen*, 82 N. Y. 114, and cases cited; *Easton* v. *Ormsby*, 18 R. I. 309, [27 Atl. 216]; Insolvent Act, sec. 45, last proviso.) The mistake of defendants lies in supposing that the lien of the attachment in *Rosenthal* v. *Brusie* continued on the attached goods after they had been released to Brusie in consequence of the delivery bond. Our statute and the inferences which follow from the decisions of this court seem to put the question at rest. Upon the execution of the bond, such as was given by defendants, 'an order may be made, releasing from the operation of the attachment any or all of the property attached.' (Code Civ. Proc., sec. 554.) It is impossible that property can be 'released from the operation of the attachment' if it yet remains subject to the attachment lien. . . . We are satisfied that no lien of the attachment persisted on the goods in this case after the release to the owner."

Our conclusion from all the authorities which we have examined and to many of which special attention has been directed in this opinion is that there is no provision in the Federal Bankruptcy Act with which the judgment asked for by the plaintiff in this action would be in conflict. In other words, there is no language in said act which prevents the rendering or entering of such a judgment, and our opinion is that the court below should have entertained the motion of the plaintiff for a special or qualified judgment against the defendant, and that, in refusing to do so, and in disallowing the above-indicated proof offered by the plaintiff in support of said motion, the court erred to the prejudice of the latter.

As stated above, the defendant has not in his brief or otherwise assailed or challenged the legal propositions above considered, but, as we understand him, he denies the propriety of their application to the case in hand, and further maintains that, even if this case in the abstract presented an appropriate instance for their application, the plaintiff did not properly proceed in the court to make them or to justify a review of the ruling of the court denying him the remedy sought.

In support of this position it is declared: "1. There is absolutely no mention made in any of the pleadings of a writ of attachment having been issued or a bond to prevent its levy having been given. There was, therefore, no issue presented as to those matters. 2. The findings fully covered all the issues raised. 3. The specifications of particulars wherein plaintiff claims the evidence insufficient to support the decision is in fact addressed to the conclusions of law and not to findings of fact. 4. The notice of intention to move for a new trial fails to specify as one of the grounds, 'errors in law, occurring at the trial, and excepted to,' etc., the only grounds of the motion being: Insufficiency of the evidence to justify the decision and that the decision is against law."

The reply to the first of the above-stated propositions is, in our opinion, that, since the ultimate question at issue was whether the plaintiff was entitled to any sort of judgment against the defendant under the issues as finally framed, the fact of the issuance of the writ of attachment, the fact of its levy upon the property of the defendant, the fact of the giving of the undertaking for the purpose of effecting a release of the attachment, and the fact of such release, were purely evidentiary, or constituted mere evidence upon which the court might predicate its conclusion upon said question. It was, therefore, even if proper, unnecessary to plead those facts.

Nor can we conceive of a more appropriate procedure to which the plaintiff might have resorted for the protection and preservation of his rights against the sureties than that adopted. The trial of the case was, of course, necessary, notwithstanding the special plea set up by the supplemental answer and its availability as a perfect defense to the action, if proved. If it transpired, as it did transpire, that the spe-

cial plea could be established, then the plaintiff, still con-
cerned with the ultimate decision, was entitled to a judgment
in form which could do the defendant himself no possible
harm, but which would preserve to him (the plaintiff) cer-
tain rights arising out of the controversy to which he was
justly and legally entitled.

As to the fourth proposition above stated, it is sufficient
to say that whether the grounds upon which the plaintiff
founded his motion for a new trial were or were not such as
to warrant the trial court in legally considering and passing
upon the alleged errors involved in the rulings of the court
excluding proof of the attachment and the bond given to
secure the release thereof is, so far as this appeal is con-
cerned, wholly immaterial. Indeed, under the existing sys-
tem for taking appeals in this state, it was not necessary for
the plaintiff to move for a new trial to authorize this court
to review the errors mentioned, and, so far as is concerned
our right and authority to do so, it may be assumed that no
motion for a new trial was in fact made. The appeal here
was taken after the abrogation by the legislature of 1915 of
the right to appeal from an order denying a new trial (Stats.
1915, p. 209, amending sec. 963, Code Civ. Proc.), and the
said errors may, therefore, be reviewed by this court on the
appeal from the judgment, notwithstanding that the court
below might have been justified in denying the motion for a
new trial because of the insufficiency of the grounds upon
which the motion was based, as designated in the notice of
intention, to point the errors relied upon. (Code Civ. Proc.,
sec. 956.) The last named section provides: "Upon an ap-
peal from a judgment the court may review the verdict or
decision, and any intermediate *ruling,* proceeding, order or de-
cision which involves the merits or necessarily affects the judg-
ment, *or which substantially affects the rights of a party. . . ."*
(Italics ours.) The motion for a new trial was made upon
the minutes of the court, and the errors occurring at the trial
were preserved by a bill of exceptions, duly settled, for use on
the appeal from the judgment. (Code Civ. Proc., sec. 950.)
The errors are, therefore, legally before this court for review,
and quite manifestly they "involve the merits," "necessarily
affect the judgment," and most unquestionably "substan-
tially affect the rights of" the plaintiff.

The judgment is therefore reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

Chipman, P. J., and Burnett, J., concurred.