## Case No. 3,571.

### DARBY v. BOATMAN'S SAV. INST.

[1 Dill. 141;¹ 4 N. B. R. 600 (Quarto, 195); 3 Chi. Leg. News, 249; 4 Am. Law T. 117; 1 Leg. Op. 146; 1 Am. Law T. Rep. Bankr. 251.]

Circuit Court, D. Missouri. 1870.²

BANKRUPTCY—LOANS TO INSOLVENTS—USURY—EQUITY JURISDICTION.

1. The bankrupt act does not prohibit a person from loaning money at legal rates to one whom he has reason to believe to be insolvent, and taking security for such loan, provided it be made bona fide and without any intent, or participation in any intent, to defraud creditors or defeat the bankrupt act.

[Cited in Gaffney v. Signaigo, Case No. 5,-169; Bean v. Brookmire, Id. 1,169; Babbitt v. Walbrun, Id. 695; Lewis v. Clarendon, Id. 8,320; Clark v. Hezekiah, 24 Fed. 667.]

[See note at end of case.]

2. Advances made in good faith to an indebted person, to enable him to carry on his business, upon security taken at the time, do not violate either the terms or policy of the bankrupt act, since the debtor gets a present equivalent for the new debt he creates and the security he gives.

[Cited in Darby v. Lucas, Case No. 3,573; Re Coulter, Id. 3,276; Re Union Pac. R. Co., Id. 14,376; Crocker v. First Nat. Bank, Id. 3,397.]

[See note at end of case.]

3. Where the charter of a bank prohibited it from taking greater than a specified rate of interest, but was silent as to the effect or penalty if more than the charter rate be taken, it was *held* that if an illegal rate be contracted for,

---

¹ [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

² [Reversed in Tiffany v. Boatman's Inst., 18 Wall. (85 U. S.) 375.]

the effect was not to render the whole note void, but only the excess beyond the legal rate, and that, at all events, if such a note be voluntarily paid, neither the borrower nor his assignee in bankruptcy can recover back the principal sum, or any thing more than the excess beyond the legal rate of interest.

[Cited in Re Pittock. Case No. 11,189; Markson v. First Nat. Bank, Id. 9,097.]

[See note at end of case.]

4. Equity will entertain a bill to recover such excess: the remedy is not exclusively at law.

The complainants are trustees, under the 43d section of the bankrupt act of 1867 [14 Stat. 538], of John F. Darby, who was decreed a bankrupt on the 2d day of July, 1869. After stating that Darby was decreed a bankrupt, and Park and Tiffany appointed his trustees, the bill avers that Darby had for a long time prior to October, 1868, been doing an unprofitable business as a private banker, which defendant well knew. That being largely indebted, he had been in the constant habit of making and issuing his promissory and negotiable notes in sums of from $2,000 to $5,000, bearing interest on their face; that they were constantly placed in the hands of street brokers and sold or shaved at a heavy discount thereon for a commission paid by Darby, which defendant knew. That Darby's real estate was all fully incumbered and the incumbrances recorded, and of which defendants had notice. That on or about the 14th of October, 1868, defendants, knowing that Darby was acting in contemplation of insolvency, and that his course of business must inevitably render him bankrupt, conspiring together for their own benefit, and intending to enrich themselves at the expense of Darby and his creditors, and conspiring with Darby himself to "gain and maintain for him an unreal, false and fictitious credit," and in fraud of his creditors, and designing, etc., to defeat the bankrupt law, did, being limited by its charter to eight per cent., agree to lend, and did lend to said Darby $128,137.50 and receive therefor his note for $135,000, dated 14th October, 1868, bearing ten per cent. interest after maturity, and payable six months after date; on the face of this note was written, "One hundred and fifty, seven per cent. jail bonds, $1,000 each, as collateral to this note, are deposited in the Bank of America, New York," and on the back of it were certain memoranda of payments beginning 5th March, 1869, and ending June 3d, 1869, extinguishing the note and ten per cent. That the note was utterly void and fraudulent. When it became due, defendant fraudulently extended it, knowing, etc., that they allowed him to sell and dispose of the said bonds within four months of his bankruptcy, knowing, etc., and received the proceeds thereof from him in payment of said note. That the defendant well knowing, etc., refused to discount certain other notes of Darby indorsed by responsible persons, but did purchase from street brokers the following, namely: Two notes, each indorsed by Mar-

shall Brotherton, dated 21st September, 1868, and at five and six months respectively, each for $5,000; three notes dated about 3d, 7th, and 27th of November, 1868, payable three months, sixty days, and six months after date, for $5,000 each, indorsed by S. Knox. Defendant knew that these notes were indorsed for the mere accommodation of Darby, and sold by note brokers at usurious and illegal rates, as high as from twelve to fifteen per cent., and contrary to their charter. That all such notes were void. That afterwards, having reasonable cause to believe Darby to be acting in contemplation of bankruptcy, defendants received the amount of said notes at maturity from said Darby. Defendants also bought another note, dated 6th February, 1869, at sixty days, for $5,000, indorsed by Brotherton, and received the amount at maturity. Plaintiffs charge that defendants had reasonable cause to believe at the time of the negotiation of said notes that Darby was insolvent and acting in contemplation of insolvency; that the course and tendency of his business must lead to ruin; that the mode of selling his paper was not the usual one; that all his real estate was largely encumbered. That notes taken from Darby were void ab initio. That for the purpose of acquiring a fictitious credit Darby bid for the jail bonds of St. Louis county more than their market value; that at the time he had no funds, etc., and applied to the National Bank of the State of Missouri to loan him the money; the bank lent him the money. Darby lost large sums by the purchase, and was indebted therefor to the bank, and being unable to pay, applied to the defendants to lend him $128,137.50 and to discount his note for $135,000, to enable him to discharge in part, at least, his said indebtedness to the bank, and not for the purpose of his ordinary and legitimate business; all of which defendant well knew, and conspired with Darby to maintain for him his said fictitious credit, and to defeat the provisions of said act, and discounted the said note in furtherance of said plan. Said bonds had never been in Darby's possession, but had been delivered to the bank; purchasing them had been noised about in the public prints, with the intent, etc., but had been bought by said Darby and paid for by said national bank. That they never were in good faith absolutely delivered to defendant, but that defendants, upon the delivery of the bonds, made an arrangement with Darby that he might at any time sell the same, and dispose thereof before or after the maturity of the note for $135,000, applying proceeds to the payment of the note; permitted Darby to deal with the bonds and coupons as his own property, and not as held and pledged to defendants; and allowing him to be considered as the absolute owner, thereby giving him a false and fictitious credit, "necessarily productive of loss to Darby and his creditors," in fraud of

the bankrupt act. All of which was done to prevent the property of Darby from being distributed under the bankrupt law. Wherefore plaintiff "ought in equity and in accordance with the terms of said act, to recover of said defendants all the said sums of money to them paid by the said Darby in fraud of said act and in payment of said fraudulent and void notes," and the prayer is for a decree to that end. A general demurrer to the bill is filed, on which the questions decided arise.

Glover & Shepley and Samuel Knox, for complainant.

Thos. T. Gannt and Lackland, Martin & Lackland, for defendant.

Before DILLON, Circuit Judge, and TREAT and KREKEL, District Judges.

DILLON, Circuit Judge. This is a bill in equity by the trustees in bankruptcy of John F. Darby, to recover from the defendants the sum of $165,000, to which, for the reasons stated in the bill, the trustees claim to be entitled. The facts set forth in the bill are numerous, and several transactions are detailed. The questions presented may be best treated by first stating some principles of law which underlie this controversy, and then by applying these principles to the case made by the bill.

There is no provision of the bankrupt law which prohibits a person from loaning money to, or discounting at legal rates, the note of a person whom he has reason to believe to be insolvent, provided the former makes such a loan or discount bona fide, and without any intent or participation in any intent or scheme to defraud creditors or defeat the bankrupt act. As such loans may be lawfully made, so security therefor may be lawfully taken. The distinction is here: the act under the circumstances stated in the bill does prohibit a debtor from giving, or a creditor from receiving, security for a pre-existing debt, thereby obtaining a preference which it is one of the chief purposes of the law to prevent. So the bankrupt act prohibits an insolvent person from making any conveyance or disposition of his property to those not creditors which shall work a fraud upon creditors and upon the act. Sections 14, 35, 39; Bean v. Brookmire [Case No. 1,168]. The cardinal idea is that all the property of a person in Darby's situation ought to be appropriated for the equal and indiscriminating benefit of all his creditors; and therefore, he can neither fraudulently diminish the amount of his assets, nor give one creditor or class a preference over others, since such preferences are stamped by the inexorable policy of the enactment as void. But an insolvent person may properly make efforts to extricate himself from his embarrassments, and therefore he may borrow money and give at the time security therefor, provided always the transaction be free from fraud in fact

and upon the bankrupt act. And hence it is a settled principle of bankrupt law, both in England and in this country, that advances made in good faith to a debtor to carry on business, upon security taken at the time, do not violate either the terms or policy of the bankrupt act. This is manifestly right, since the power to raise ready money may save the party from bankruptcy and ruin, and since his creditors are not injured nor his estate impaired, because he gets a present equivalent for the debt he creates and the security he gives. To this effect are all the authorities. Deac. Bankr. 68, 69, 75, and cases cited; Shelf. Bankr. 146; Hill. Bankr. c. 10, p. 333, § 16; Hutten v. Cruttwell, 1 El. & Bl. 15; Harris v. Rickett, 4 Hurl. & N. 1; Bittlestone v. Cooke, 6 El. & Bl. 296; Lee v. Hart, 34 Eng. Law & Eq. 569; Ex parte Shouse [Case No. 12,815]; Bell v. Simpson, 2 Hurl. & N. 410; Hunt v. Mortimer, 10 Barn. & C. 44; Wadsworth v. Tyler [Case No. 17,032]; Bankrupt Act, § 14, second proviso; Id. § 20; In re Wynne [Case No. 18,117].

If, therefore, the advances made under the circumstances set forth by the defendants to Darby contemporaneously with the receiving of the securities had been at legal or authorized rates, they would have been valid; and the transaction not being forbidden by the bankrupt act, the security received could be enforced by law, and if so, then Darby could lawfully pay such advances out of the proceeds of the securities which he had pledged. What the law will compel one to do may be legally done by him without such compulsion.

The bill does not charge that the money was borrowed by Darby fraudulently to put it beyond the reach of creditors, but to enable him to pay a debt to the National Bank of the State of Missouri, from which he had originally borrowed the money to pay for the jail bonds, and which then had them in pledge; and there is nothing shown to invalidate the debt or security to the national bank, and the effect of the loan made by the defendants was simply to substitute them in the place of that bank, and did not work any fraud upon the creditors of Darby. The intent to defeat the bankrupt act charged in the bill is based upon the assumption that the loans and advances to Darby are void because made at illegal rates, and not upon the ground that Darby intended to conceal his property or to prefer or otherwise defraud his creditors. Having thus settled that if the loan had been at authorized rates it would not under the facts charged have been in violation of the bankrupt act, we next proceed to inquire into the effect of receiving and taking interest in excess of such rates.

The complainant's fundamental proposition is, that although the defendant actually paid Darby $128,137.50 in cash for the note of $135,000, secured by a concurrent pledge of the jail bonds as collateral, yet since the loan was made at more than eight per cent., the transaction was, to use the clear language

of the complainant's counsel, "without any authority in the charter, was ultra vires and void, created no debt in favor of the defendants, imposed no legal liability on Darby, and hence no payments could be legally made upon it; if made, were without consideration, and in fraud of the right of creditors."

The charter of the defendant granted by the state of Missouri contains this provision: "The said institution shall be authorized to loan the money deposited with her at any rate of interest not exceeding eight per cent. per annum, any law to the contrary notwithstanding." Section 14. The charter is silent respecting the effect or penalty if more than the prescribed rate of interest be taken. By the general usury laws of the state, money may be loaned at a rate not exceeding ten per cent., but if the law is violated the contract is not wholly void, as the plaintiff can recover for himself the principal sum; and the defendant is also compelled to pay legal interest for the use of the school fund, and usurious interest voluntarily paid is not under this statute recoverable back by the borrower from the usurer. Ransom v. Hays, 39 Mo. 445.

The complainant's counsel disclaim all rights grounded upon the general usury laws, since the bill is not, as they say, intended to enforce them, and is not one to recover back usury. They plant themselves wholly upon the provision in the charter above mentioned restricting the defendants to interest not exceeding the specified rate; and the argument is, as above stated, that if this provision be violated the loan is ultra vires and void. The rate of some of the loans set out in the bill exceeded not only eight, but ten per cent., and the question is, what is the effect of this violation of the law?

In our opinion the defendant, if more than ten per cent. be taken, is within the operation of the usury laws of the state, if the debtor chooses to plead them. Rev. St. 1865, p. 83, § 4. And see State v. Boatmen's Sav. Inst.,—quo warranto case,—MS. Sup. Ct. Mo. [48 Mo. 189]. If so, the effect is that under those laws it would lose its right to recover any but the principal sum, but the debt having been paid, the usurious interest could not have been recovered back by Darby had he not been put in bankruptcy, nor can it in this state be recovered by his assignees, much less could he or they recover back the principal sum. Ransom v. Hays, 39 Mo. 445. But suppose that the charter alone applies to the transaction, what is the effect upon it? The charter itself is silent on this subject. Upon the best consideration we have been able to give to the matter, our conclusion is that the effect of taking more than the specified rate of interest on loans, is not to avoid the whole note—to nullify the transaction—to forfeit the entire debt or sum loaned, but only the excess over the charter limit, so that the note, as to the principal sum at least, if not the principal sum

and eight per cent. interest, was valid, the security taken therefor valid, and so could be enforced, and the bonds sold against Darby's will, and hence could be lawfully sold by him, with defendants' consent, and the proceeds paid on the debt they were pledged to secure. This is a case where the line which separates that which is authorized from that which is prohibited, is plainly drawn, and the division easily made, and hence there is no necessity, in order to enforce the prohibition or to secure its policy, to sacrifice the good that the bad may be destroyed. In contracts usurious under the state law, the same division is constantly made; the plaintiff recovers that which is not prohibited, and loses his right to that which is. If we look at the legislative history of banking and similar corporations in the state, we find no such severe policy declared as that, if more than a given rate of interest be taken, the whole sum loaned shall be forfeited, but quite the contrary.

The power of the defendant to make loans is expressly conferred, and therefore exists; the limitation is only as to the rate. Up to the limitation line all is good; beyond that, bad. And such is the general, though not quite uniform, doctrine of the authorities. Harris v. Runnells, 12 How. [53 U. S.] 78; Bank of U. S. v. Fleckner, 8 Wheat. [21 U. S.] 338 (to which the court "deliberately adhered" in Bank of U. S. v. Waggoner, 9 Pet. [34 U. S.] 378); Farmers' Bank v. Burchard, 33 Vt. 346, and cases cited; Commercial Bank v. Nolan, 7 How. (Miss.) 508; Rock River Bank v. Sherwood, 10 Wis. 230; National Exch. Bank v. Moore [Case No. 10,041]; Lyon v. State Bank, 1 Stew. (Ala.) 468; Grand Gulf Bank v. Archer, 8 Smedes & M. 151; McLean v. Lafayette Bank [Case No. 8,888]. This last case contains a highly interesting discussion of the subject by Judge McLean, whose views have our approval. Before leaving this point it should be observed that we have not overlooked the case of Bank of U. S. v. Owens, 2 Pet. [27 U. S.] 557, but upon examination of the other cases referred to in the same court, it is quite clear that its doctrine is modified, but if not, it has no rightful application to a case where, as in the one now under consideration, the illegal contract is not, as in that case, sought to be enforced, but where having been performed, the money voluntarily paid under it is sought to be recovered back. If, as shown above, the loan was not a fraud in fact or upon the bankrupt law, Darby's trustees have no more right to recover back the money which Darby voluntarily paid, because paid in violation of the charter, than Darby himself would have had if he were not in bankruptcy. Suppose, for the argument, however, that the note was void because the charter rate was exceeded, does it then follow that the bill to recover back the whole sum received will lie? This bill is in equity, and the rule is well settled that

under statutes which declared contracts affected with usury utterly null and void, equity would only relieve against them on condition that the borrower should tender or pay the sum actually lent, and lawful interest; and if paid, neither at law nor in equity could he recover back anything more than the excess beyond principal and lawful interest, unless the action be expressly given. 1 Story, Eq. Jur. 301, 302; Spain v. Hamilton's Adm'r, 1 Wall. [68 U. S.] 604. The analogy is good here, and Darby having received the defendant's money and paid it, there is no equity whatever to recover back any part of it except the excess beyond the principal and the eight per cent. interest. In equity, if not at law, there was a debt for the amount borrowed, and a right to the security of the bonds pledged. The debt was paid out of the securities, and if the pledging of the securities was valid, as we have seen it was, the defendant had the right to make its debt out of the securities, notwithstanding its officers knew when they received payment that Darby was insolvent. So that the question of the defendants' liability turns upon the point first discussed, to-wit: whether the bankrupt act was violated by the loans to Darby, and the taking of the securities from him by the defendants under the circumstances set forth in the bill, and that question we have felt constrained to resolve against the complainants.

Counsel concede that the other transactions mentioned in the bill involve the same principles, and it is unnecessary to notice them specially.

In view of the charter restriction and its policy, the parties were not in pari delicto, and as to the excess above the principal and eight per cent. interest, we think, under the facts charged in the bill, there is liability, at least to some extent, on the part of the defendants, and the authorities show that relief may, in proper cases, be had in equity, and that the remedy is not exclusively at law. Indeed, the original remedy in such cases was given in equity. Fonbl. Eq. bk. 1, c. 4, § 7; Story, Eq. Jur. § 302; Id. §§ 64, 81; Browning v. Morris, Cowp. 790; Mare v. Sandford, 1 Giff. 288, 295; Atkinson v. Denby, 6 Hurl. & N. 778; Id., 7 Hurl. & N. 934. As to the $135,000 transaction, certainly this liability is not affected by reason of the non-liability under the usury statute of the state for usurious interest voluntarily paid, for that statute does not apply to this transaction.

For the reasons above stated, the demurrer to the bill must be overruled, and the bill may be retained to determine the liability of the defendant in respect to the illegal interest received. Demurrer overruled.

NOTE [from original report]. On appeal the supreme court affirmed the principles of the foregoing opinion, and the decree on all points, except that it directed "the circuit court to ascertain the excess of interest over the charter rate paid on the six accommodation notes, and to enlarge the decree so as to cover that sum." Tiffany v. Boatman's Inst., 18 Wall. [85 U. S.] 375. Compare [Farmers' Nat. Bank v. Dearing] 91 U. S. 35; [Bernhisel v. Firman] 22 Wall. [89 U. S.] 170.

Loans on Security in Good Faith to Insolvents not Prohibited by the Bankrupt Act. Followed, Babbitt v. Walbrun [Case No. 695]; In re Union Pac. R. Co. [Id. 14,376]; Bean v. Brookmire [Id. 1,169]; Gaffney v. Signaigo [Id. 5,169]; Darby v. Lucas [Id. 3,573]; In re Coulter [Id. 3,276]. Cited, Crocker v. First Nat. Bank [Id. 3,397].

Jurisdiction of Law and Equity Courts in Cases of Fraud Concurrent. Followed, Bean v. Brookmire [supra].

Contracts Respecting Interest Void as to Excess over Statutory Rate. Followed, Lewis v. Clarendon [Case No. 8,320]. Explained, In re Pittock [Id. 11,189].

