[Sac. No. 346. In Bank.—December 31, 1898.]

N. ROSENTHAL et al., Respondents, v. R. E. PERKINS et al., Appellants.

ATTACHMENT—REDELIVERY BOND—DISSOLUTION OF ATTACHMENT—INSOLVENCY OF DEFENDANT—LIABILITY OF SURETIES.—A redelivery bond given for the release of property attached, conditioned that if plaintiff recover judgment in the action, the defendant will, on demand, redeliver the attached property to the proper officer, or that, in default thereof, the defendant and his sureties will, on demand, pay the value thereof, not exceeding the fixed sum, operates to release the property from the attachment and to dissolve the attachment as to the property so released, and upon an adjudication of the insolvency of the defendant, his ability to return the property having ceased, and in case of a recovery of judgment by the plaintiff, the sureties on the bond become liable to an action by him for the value of the property.

ID.—ALTERNATIVE CONTRACT—IMPOSSIBILITY OF ONE ALTERNATIVE.—If an agreement is in the alternative, and one of the alternatives becomes impossible or cannot be lawfully performed, the party so

contracting is bound to perform the other alternative, and the obligation is to be interpreted as if the other alternative stood alone.

ID.—INSOLVENCY PROCEEDING—PREVIOUS DISSOLUTION OF ATTACHMENT.— If at the time of commencing a proceeding in insolvency there is no attachment in force upon which the proceeding can operate, an attachment against the insolvent debtor having been previously dissolved, by a bond given for that purpose, the liability of the sureties on such bond is not released or affected by the insolvency proceeding.

ID.—ORDER FOR RELEASE OF ATTACHED PROPERTY—RECITAL IN UNDERTAKING—PRESUMPTION.—Where the goods were in fact released as a consequence of the bond being given, and the undertaking for the release of the attached property recited that it was given pursuant to an order of the court requiring it to be given, and the officer accepted the bond and surrendered the property, it must be presumed that an order discharging the attachment was made pursuant to sections 554 and 555 of the Code of Civil Procedure, and that the officer regularly performed his duty in releasing the goods.

ID.—EXECUTION AGAINST INSOLVENT.— The issuance of an execution against the insolvent debtor is not a condition precedent to an action on the undertaking against the sureties on the bond given by him for the redelivery of attached property.

ID.—DEMAND FOR RETURN OF PROPERTY NOT REQUIRED.—A demand need not be made upon the insolvent debtor for the return of the property before an action can be maintained against the sureties on his bond to release attached property.

APPEAL from a judgment of the Superior Court of Madera County and from an order denying a new trial.   W. M. Conley, Judge.

The facts are stated in the opinion.

L. L. Cory, and William T. Searles, for Appellants.

Francis A. Fee, for Respondents.

BRITT, C.—The plaintiffs here sued one Brusie in a justice's court, and procured a writ of attachment to be issued which was levied by the township constable on one hundred tons of hay, the property of Brusie.   Afterward, the defendants in the present case executed an undertaking in which was recited that Brusie had appeared in such action in the justice's court, and

CXXIII CAL.—16.

applied for an order to discharge the attachment "upon the execution of an undertaking in accordance with the provisions of sections 554 and 555 of the Code of Civil Procedure," and that said court had fixed the amount of such undertaking at five hundred dollars; the instrument proceeded that in consideration of the release of the property and the discharge of the attachment the obligors undertook "that in case the said plaintiffs recover judgment in said action the said defendant will on demand redeliver such attached property so released to the proper officer, . . . . or that, in default thereof, the said defendant and sureties will on demand pay to the said plaintiff the value of the property released, not exceeding the sum of five hundred dollars." Upon the execution of said bond the officer released the hay to Brusie; a few days later, and in less than a month from the time of the levy of the writ, said Brusie filed his voluntary petition in insolvency under the Insolvent Act of 1880, and in the usual course of such proceedings an assignee was appointed to whom was conveyed all his estate. By permission of the court entertaining the matter in insolvency the plaintiffs prosecuted their action in the justice's court "for the purpose of fixing the liability of the sureties upon such undertaking" (section 45 of said act), and obtained judgment against Brusie for the sum of three hundred and seventeen dollars, which has not been paid. Demand was made on Brusie and his said assignee for the return of the property released as aforesaid, but without effect. The defendants also refused on demand to pay the value of the property or the amount of plaintiffs' judgment; hence the present action on the said bond.

Section 17 of said Insolvent Act provides that the assignment shall vest the title to the estate of the insolvent in the assignee "although the same is then attached on mesne process, and shall dissolve any attachment made within one month next preceding the commencement of the insolvency proceedings"; defendants contend that the effect of this provision was to dissolve the attachment in *Rosenthal et al. v. Brusie,* and render impossible the return of the released property to the attaching officer, and hence to destroy the obligation of their undertaking. The investigator is impressed at the outset that this bond embodied

a contract that in the event of plaintiff's recovery against Brusie one of two alternative promises should be performed, viz., the released property would be redelivered for application to the payment of the judgment, or the sureties would pay the value thereof, not exceeding the amount of the judgment. The first of these became impossible through the act of the law set in motion by the default (failure to pay his debts and resort to insolvency) of the principal in the bond. Why should defendants not perform the other alternative which remains possible? "If an agreement is in the alternative, and one branch of the alternative cannot by law be performed, the party is bound to perform the other." (*Stevens v. Webb,* 7 Car. & P. 60—a case in some essential features very like the present; and see *Drake v. White,* 117 Mass. 10; *State v. Worthington,* 7 Ohio, 171; *Barkworth v. Young,* 4 Drew, 1, 18, *et seq.;* 2 Parsons on Contracts, marg. p. 673, and notes in 8th ed.) As succinctly stated in our code: "If one of the alternative acts required by an obligation is such as the law will not enforce, or becomes unlawful, or impossible of performance, the obligation is to be interpreted as though the other stood alone." (Civ. Code, sec. 1451.) Consequences which might follow destruction of the released property itself do not at present concern us.

The force of the impression produced by the aspect of the case in outline is not diminished on minuter examination of the ground of the defense. It is clear, for reasons which need not be enlarged upon, that if at the time the proceeding in bankruptcy is instituted there is no attachment in force on which the proceeding can operate, if the attachment lien has already been discharged by a bond for that purpose, then the liability of sureties on the bond is not affected by the subsequent bankruptcy of their principal. (*McCombs v. Allen,* 82 N. Y. 114, and cases cited; *Easton v. Ormsby,* 18 R. I. 309; Insolvent Act, sec. 45, last proviso.) The mistake of defendants lies in supposing that the lien of the attachment in *Rosenthal v. Brusie* continued on the attached goods after they had been released to Brusie in consequence of the delivery bond. Our statute and the inferences which follow from the decisions of this court seem to put that question at rest. Upon the execu-

tion of the bond, such as was given by defendants, "an order may be made releasing from the operation of the attachment any or all of the attached property (Code Civ. Proc., sec. 554); it is impossible that property can be "released from the operation of the attachment" if it yet remains subject to the attachment lien. It was assumed in *Mullally v. Townsend,* 119 Cal. 47, that the debtor who had obtained the release of property under this section could, by mortgaging it, create a lien which would be superior to the execution in the attachment suit; and in *Metrovich v. Jovovich,* 58 Cal. 341, that he could sell it; and in *Risdon Iron etc. Works v. Citizens' Traction Co.,* 122 Cal. 94, it was held that when property is released by order of court as exempt from levy, a dissolution of the attachment is, as to that property, accomplished. The decisions in other states where the practice allows a just analogy to be drawn with the case at bar confirm this view. (*Waterman v. Treat,* 49 Me. 309; 77 Am. Dec. 261; *Waterhouse v. Bird,* 37 Me. 326; *Robinson v. Mansfield,* 13 Pick. 139; *Lawrence v. Rice,* 12 Met. 538; Drake on Attachment, secs. 344, 357. See, also, *Schuyler v. Sylvester,* 28 N. J. L. 487; *Bunneman v. Wagner,* 16 Or. 433; 8 Am. St. Rep. 306.) In some jurisdictions the action in which chattels are attached has been regarded as one *in rem* as to those goods; as in *Gass v. Williams,* 46 Ind. 253, one of the cases most relied on by defendants; and in *Bell v. Pearce,* 1 B. Mon. 73. In that view of the nature of the action, there may be ground for holding that the property continues in the custody of the court by virtue of the action against it, even though the debtor lawfully regains possession. The theory of the remedy of attachment with us is different; the property does not become a *res.* (*Low v. Adams,* 6 Cal. 277.) We are satisfied that no lien of the attachment persisted on the goods in this case after the release to the owner.

It is said that no order of the justice's court for the release of the attached property is shown to have been made. The goods were in fact released as a consequence of the bond given by defendants, and it is not quite clear to us that they are in position to urge this objection. (*Palmer v. Vance,* 13 Cal. 553.) It is sufficient, however, to say that the record does not show that an order directing the release of the property was not made; the re-

citals of defendant's undertaking show that it was given pursuant to an order of the court requiring the same for the purpose of releasing the attached goods in the manner prescribed by sections 554 and 555 of the Code of Civil Procedure; the constable accepted the bond and surrendered the goods; in this state of the case it ought to be inferred that Brusie obtained what the bond shows he applied for, viz., an order discharging the attachment under said sections of the code, and that the constable regularly performed his duty when he released the goods.

Section 552 of the Code of Civil Procedure is to the effect that if an execution against the defendant in the attachment be returned unsatisfied, in whole or part, the plaintiff may prosecute any undertaking given pursuant to section 540, or section 555, or he may proceed as in other cases upon return of an execution. Appellants contend that thereby the issuance and return of an execution against Brusie was made a condition precedent to the present action on the bond (*Brownlee v. Riffenburg,* 95 Cal. 447); and that as the issuance of any execution on the judgment against Brusie was forbidden by section 45 of the Insolvent Act, the condition of defendants' liability on the bond can never transpire. The argument proves too much; it would equally destroy the liability of sureties on a bond given under section 540 to prevent an attachment—as to which we suppose argument hardly lies that it is affected by subsequent insolvency of the debtor. Looking to the several provisions referred to, and to the clause of said section 45 allowing the prosecution to judgment of the action against the attachment defendant "for the purpose of fixing the liability of the sureties" on bonds such as this, we conclude that the legislature did not mean in the same breath to destroy the liability of the sureties by forbidding an execution against the insolvent, but meant rather to preserve such liability and dispense with the issuance of an execution preliminary to an action against them; an execution against the insolvent would be a futility in the face of the title to the insolvent's property taken by his assignee.

It is contended that no valid demand was or could be made on Brusie or his assignee for the return of the property, because the assignee was the lawful owner thereof for the purposes of

his trust, and neither the plaintiffs nor the constable had the right to receive it from him.   At bottom this is not materially different from the objections that the restoration of the goods according to the first alternative of the bond has become impossible, and that the action is not maintainable because no execution can issue on the judgment taken against Brusie.   For reasons advanced in considering those objections severally this must also be overruled.   One or two minor points are made, but they do not seem meritorious.

The judgment and order denying a new trial should be affirmed.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are affirmed.

                    Garoutte, J.     Harrison, J.,
                    Van Fleet, J.,   McFarland, J.,
                         Beatty, C. J.