## In re BUSBY.

### (District Court, M. D. Pennsylvania. July 30, 1903.)

### No 206.

**1. BANKRUPTCY—PREFERENCE—SURRENDER—FOUR MONTHS' LIMIT.**

Under the bankruptcy act as it stood prior to the amendment of 1903, it did not matter when the preference, required by the act to be surrendered by the creditor to enable him to come in on the rest of the estate, was given, provided the debtor was insolvent at the time; the four months' limit applying only to the question whether it could be avoided by the trustee.

**2. SAME—SECURED DEBT.**
    At the time a debt is created the creditor has the right to dictate the terms under which he will part with his money or property, and may therefore demand that he shall first be secured to such an extent as satisfies him; and with this· the bankruptcy act does not interfere. Where, therefore, at the inception of a loan at bank, a life insurance policy was assigned as security, the creditor was only required to account for and credit its value.

**8. SAME—PREFERENCE—COLLATERAL SECURITY FOR A PRE-EXISTING DEBT.**
    But where, later on, at a time when the debtor was clearly insolvent, on demand for additional security, certain shares of stock were put up by the debtor as collateral, being pledged as they were to secure a pre-existing debt, the transaction was a preference, which must be given up before any of the notes held by the bank could be proved.

In Bankruptcy. Exceptions to report of referee.

John B. McPherson, for exceptions.
C. J. De Lone, for preferred creditor.

ARCHBALD, District Judge. At the time a debt is created the creditor has the right to dictate the terms on which he will part with his money or property, and may therefore demand that he shall first be secured to such an extent as satisfies him. With this the bankruptcy law does not undertake to interfere, the creditor being allowed to retain without question whatever advantage he has acquired thereby. Bankr. Act, § 57, cls. e, h (Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]). But, when a debt is once contracted, payment on account, or the transfer of property for the purpose of better securing it, constitutes a preference if the debtor is insolvent at the time, and the result will be to enable the creditor to obtain a greater percentage of his claim than others of the same class. Section 60a, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]. This, in case of the subsequent bankruptcy of the debtor, the law does not allow to go unchallenged. The creditor so preferred must surrender the preference if he desires to participate in the rest of the bankrupt's estate. Section 57g, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]. And if the preference was given within four months of the proceedings in bankruptcy, and the creditor had reason to believe that a preference was intended, the trustee may bring action and recover it back. Section 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]. As the law stood at the time the present controversy arose, it did not matter when the preference was given, provided the debtor was insolvent. It had to be surrendered to enable the creditor to come in, the four-months limit applying only to the question whether it could be avoided by the trustee. In re Jones, 4 Am. Bankr. Rep. 563, 110 Fed. 736; In re Abraham Steers Lumber Co. (D. C.) 110 Fed. 738; Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171. This has now been changed by the amendatory act of February 5, 1903, c. 487, 32 Stat. 797; but whether the spirit of the law is as well preserved thereby is a question.

The facts are not in serious controversy. In August, 1899, Charles H. Busby, the bankrupt, obtained the discount at the Hanover Savings Fund Association of several notes, assigning at the time as collateral security therefor a life insurance policy of $3,000. These notes were

indorsed or signed as co-maker and surety by S. L. Johns, and they were renewed and continued in this form down to the time of bankruptcy. How much they amounted to in the beginning is not shown. The money was used in Mr. Busby's business, and they may have varied. But, at all events, on August 8, 1901, a note of $2,000, at four months, with Mr. Busby as maker and Mr. Johns as surety, formed a part of the line of discounts allowed by the bank. This note became due December 8th, but lay over unattended to until January 20, 1902. At that time Mr. Busby's paper amounted to about $18,000 or $20,000, and the bank examiner, who was there, demanded that he should pay off some of the loans or give additional security. Mr. Busby thereupon put up, as collateral for the $2,000 note, four shares of the Conawago Cigar Box Company, of the par value of $250 each, and the loan was renewed in that form for another four months, and again on May 24th for 30 days longer. On July 8th following he went into voluntary bankruptcy, and Mr. Johns was compelled to take up the note along with others on which he was liable; the life insurance policy and the Cigar Box stock being turned over to him at the same time. Whether Mr. Johns knew it or not, there is no question that in January, 1902, Mr. Busby was insolvent. Objection is made on this showing to the allowance of the claims which he seeks to prove until the preference secured has been surrendered.

As to the life insurance policy which was assigned to the bank at the inception, the debt stands as a secured and not a preferred matter, and all that is required of Mr. Johns is that he account for and credit its value. But as to the stock the case is different. It was pledged to secure a pre-existing debt at a time when the debtor was clearly insolvent, and was therefore a preference, which must be given up before any of the notes taken up by Mr. Johns can be proved. The referee holds that the transaction is saved because it occurred more than four months prior to the bankruptcy. While this, as is pointed out above, is now the law, it was not at the time the stock was pledged, and it took an amendatory act to make it so; and, as the law as it stood when the property was turned over is to govern, a preference was thereby clearly obtained.

The action of the referee in allowing the claim is reversed, and the claim is directed to be disallowed unless a surrender of the preference secured shall first be made.