[Civil No. 3434.  Filed December 18, 1934.]

[38 Pac. (2d) 655.]

SERVALL AUTOMOBILE SERVICE, INC., a Corporation, R. E. DOWNING, Jr., and MARGUERITE M. DOWNING, His Wife, W. W. CADWELL and LAURA M. CADWELL, His Wife, Appellants, v. WILLIAM C. McDUFFIE, as Receiver of the RICHFIELD OIL COMPANY OF CALIFORNIA, a Corporation, Appellee.

Messrs. Armstrong, Kramer, Morrison & Roche, for Appellants.

Messrs. Hayes, Stanford, Walton, Allee & Williams, for Appellee.

ROSS, C. J.—On June 13, 1932, William C. Mc-Duffie, as receiver of the Richfield Oil Company of California, filed a complaint against Servall Automobile Service, Inc., upon a stated account for $755.55 and at the same time caused the issuance and levy of a writ of attachment upon defendant's property as security for the satisfaction of any judgment recovered. Upon the same day the defendant replevied the property by giving a bond, with sureties (R. E. Downing, Jr., and Marguerite M. Downing, his wife; W. W. Cadwell and Laura M. Cadwell, his wife), payable to plaintiff in double the amount of plaintiff's debt, conditioned that the defendant would satisfy any judgment rendered against it or pay the estimated value of the property replevied with lawful interest. The defendant's amended answer consists of a general demurrer and a counterclaim. It further sets out in its answer that it, on October 11, 1932, filed a petition in voluntary bankruptcy, and on October 12, 1932, was, by the United States District Court for Arizona, adjudged a bankrupt; that by reason thereof the action was barred, the exclusive jurisdiction of his estate being in the bankruptcy court.

The trustee in bankruptcy in the meantime tried to intervene, claiming the right of subrogation to plaintiff's rights under the attachment, but was denied such right.

The judgment was for the plaintiff against the defendant and the sureties on the replevin bond for the full amount of his claim, but the judgment as to defendant was perpetually stayed on account of his bankruptcy.

The defendant and sureties on the replevin bond have appealed.

While the appellants make several assignments of error, we think there is only one real question involved and that is the effect of the bankruptcy proceedings upon the liability of the sureties. Appellants contend that, the adjudication of bankruptcy being within four months of the date of the attachment, all rights and privileges thereunder were dissolved, including the release of both the principal and sureties on the replevin bond. This contention is based upon the provisions of section 107 (f), title 11 U. S. C. A., reading as follows:

"(f) That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a. bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate. . . . "

It is quite clear under the provisions of this statute that any existing attachment lien acquired within four months of the adjudication of bankruptcy would fail. It is, however, the contention of plaintiff that the effect of the replevin bond was to release the attachment lien and leave the attached property a part of the estate as though attachment had never been levied against it.

An examination of the local statutes concerning attachments convinces us that plaintiff's contention is right. The replevin bond provided for in section 4250, Revised Code of 1928, is one conditioned to satisfy any judgment obtained in the action, or to pay the estimated value of the property attached

with lawful interest from date of bond, showing con-
clusively that the bond is a substitute for the attach-
ment lien and that the attaching creditor must look
to the bond, and not the attachment lien, for security
to satisfy the judgment. Section 4255, Id., is con-
firmatory of this statement, for therein it is provided
that the levy of the writ creates a lien upon real
property from the date of the levy "and on such per-
sonal property as remains in the hands of the attach-
ing officer, and on the proceeds of such personal prop-
erty as may have been sold." This language implies
as clearly as if it stated it affirmatively that the at-
tachment lien is canceled or annulled when personal
property no longer remains in the hands of the at-
taching officer, evidently meaning when the property
is replevied the bond is the sole security of the creditor.

In *House* v. *Smith's Cashway, Inc.,* 38 Ariz. 399,
300 Pac. 951, 952, we said:

"It [the order vacating the attachment] unques-
tionably dissolved the attachment, and substituted
for such attachment lien the security of the bond."

The courts are not in accord on the effect of an
adjudication of bankruptcy within four months of the
levying of an attachment upon the liability of the
sureties on a bond given to secure the satisfaction
of a judgment or a return of the property attached
to the debtor. There is one line of cases holding that
under section 107 (f), *supra,* no judgment may be
entered against the bankrupt, and, since the sureties'
liability is under the terms of the bond contingent
upon such a judgment, the sureties are likewise re-
leased. *Windisch-Muhlhauser Brewing Co.* v. *Simms,*
129 La. 134, 55 So. 739; *Stull Bros.* v. *Beddeo,* 78 Neb.
119, 112 N. W. 315, 14 L. R. A. (N. S.) 507; *A. Klip-
stein & Co.* v. *Allen-Miles Co.,* (C. C. A.) 136 Fed.
385; *Crook Horner Co.* v. *Gilpin,* 112 Md. 1, 75 Atl.

1049, 136 Am. St. Rep. 376, 28 L. R. A. (N. S.) 233; *House* v. *Schnadig,* 235 Ill. 301, 85 N. E. 395.

But we think the assumption that no judgment may be entered against a debtor after he has been adjudicated a bankrupt is without basis in the law. Section 107 (f), *supra,* does not undertake to prohibit judgments against the bankrupt after adjudication. It only nullifies judgment liens with other liens. The context in which the word ''judgment'' is used conclusively shows that it is the lien created by judgment that is null and void. This is clearly and convincingly shown in *Pope* v. *Title Guaranty & Surety Co.,* 152 Wis. 611, 140 N. W. 348, 350, in the following reasoning:

''The present bankruptcy act aims to secure an equal and equitable distribution of the debtor's property among his creditors, and to promote that end has in effect provided that no preference or advantage may be obtained by one creditor over another by virtue of any attachment, garnishment, or levy made within four months of the adjudication in bankrupty. This is as far as it was necessary for Congress to go to attain the ends aimed at. It may well be doubted whether Congress could go to the extent claimed. A creditor has a right to sue his debtor. State courts have jurisdiction of the persons of the parties, if they live therein, and of the subject-matter of an action on contract brought to collect a debt. A judgment in such an action is valid when rendered. Congress can say to the creditor, 'You may not obtain any special advantage by virtue of the judgment over other creditors in the distribution of the bankrupt's estate', and further that the creditor may be discharged from his debts, and that the judgment cannot be enforced against him. But can it say, for instance, that the judgment is not evidence of the amount of the indebtedness due from the bankrupt to the judgment creditor? Or that the judgment is unenforceable if the bankrupt is not entitled to a discharge under the law? Or that the judgment

creditor may not proceed against a surety whose liability depends on the validity of the judgment, where such action in no way affects the other creditors of the bankrupt? Whatever may be the correct answers to these questions, they pointedly suggest the improbability of congressional intent to legislate to the extent claimed, and to the extent to which a literal reading of the statute would lead. It was wholly unnecessary to do so. The judgment of the Wisconsin court was valid when it was rendered, and the liability of the surety became fixed at such time. If the creditor had any real estate to which the lien of the judgment attached, such lien was destroyed by the adjudication in bankruptcy, because such destruction was necessary to preserve the property for all of the creditors. The same would be true of the attachment lien if that had continued. If the bankrupt was discharged, the judgment could not be enforced against him, because Congress had the right to absolve the bankrupt from his debts after his property or the proceeds of it were distributed among the creditors. It was wholly unnecessary to discharge the surety from the payment of its obligation in order to protect either the debtor or the creditors.''

The condition of the replevin bond making the liability of the surety contingent upon judgment being entered against the debtor is met in this case. While the judgment may not be collected out of the assets of the bankrupt, for to allow it would be giving a preference over other creditors, it is certainly evidence of the amount owing the plaintiff from the defendant and fixes the extent of the liability of the sureties on the replevin bond.

In many of those jurisdictions in which the replevin bond has the effect of releasing the attachment lien, the subsequent bankruptcy within four months of the debtor in no way affects the liability of the sureties. In one case it is reasoned that if the replevin bond releases the attachment lien at the time of the adjudi-

cation, there would exist no "liens obtained through legal proceedings" against the insolvent's property, and that since it is only liens of that kind that are declared to be null and void, section 107 (f), *supra*, does not apply. *Higgins* v. *Brainard,* 214 Cal. 647, 8 Pac. (2d) 135, *certiorari* denied 287 U. S. 604, 53 Sup. Ct. 9, 77 L. Ed. 525.

We confess that it is difficult for us to understand how the attachment lien continued after the defendant exercised the statutory privilege of substituting other security in the shape of a replevin bond for the security of the attachment lien,. and received from the attaching officer the attached property. When this was done, the plaintiff could no longer look to defendant's property to satisfy any judgment he might obtain. The attachment lien was not only destroyed, but the property was no longer *in custodia legis.* The defendant was free to do with it what it might do with any of the rest of its property. Although the courts holding the surety liable on the bond give different reasons therefor, we believe the real grounds are well stated in *Marks* v. *Outlet Clothing Co.,* 122 Me. 406, 120 Atl. 427, as follows:

"The bankruptcy proceedings had no effect whatever upon the attachment, because that had already been vacated by the giving of the bond. There was no attachment upon which bankruptcy proceedings could operate. Had no bond been given the attachment would have been dissolved by the bankruptcy, but another state of facts existed. The defendant in the suit, instead of availing himself of bankruptcy proceedings at the time, saw fit to vacate the attachment in another way, and executed the bond to supersede it. His sureties signed with him and their legal obligations were thereby fixed by the terms of the bond itself. They bound themselves absolutely and unqualifiedly to pay the judgment within 30 days after rendition. 'So says the bond.' There is no

exception in case of bankruptcy. None is implied, and the court can insert none. It can only enforce the contract made by the parties. The condition has not been complied with, and the penalty follows."

See, also, *Alvaton Mercantile Co.* v. *Caldwell,* 31 Ga. App. 195, 120 S. E. 448; *Guaranty Security Corp.* v. *Oppenheimer,* 243 Mass. 324, 137 N. E. 644; *Waller* v. *Heinrichs,* 133 Wash. 7, 233 Pac. 23; *Texas Fidelity & Bonding Co.* v. *First State Bank,* (Tex. Civ. App.) 149, S. W. 779; *Fidelity & Deposit Co.* v. *Shepherd,* 56 App. D. C. 117, 11 Fed. (2d) 563; *Rosenthal* v. *Perkins,* 123 Cal. 240, 55 Pac. 804; *King* v. *Will J. Block Amusement Co.,* 126 App. Div. 48, 111 N. Y. Supp. 102; *St. Louis World Pub. Co.* v. *Rialto Grain & Securities Co.,* 108 Mo. App. 479, 83 S. W. 781; *Van Zandt Jacobs & Co.* v. *Steiber,* 90 Conn. 507, 97 Atl. 763.

The attachment bond became no part of the bankrupt's estate but advantaged the estate by releasing the attached property from the lien. Neither the trustee nor the defendant should be heard to dispute plaintiff's right to fix by judgment the liability of the sureties upon the bond. *Brown* v. *Four-In-One Coal Co.,* (C. C. A.) 286 Fed. 512 (*certiorari* denied 262 U. S. 749, 43 Sup. Ct. 524, 67 L. Ed. 1213).

The bankruptcy proceeding did not deprive the state court of jurisdiction of the defendant or of the subject matter, or of the power to render judgment against defendant for the debt. *Pope* v. *Title Guaranty & Surety Co., supra; Texas Fidelity & Bonding Co.* v. *First State Bank, supra.*

Complaint is made of the admission of evidence over defendant's objection and the rejection of evidence offered by it, but we find no error in the court's rulings thereon.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.