In re FEDERAL BISCUIT CO.

(Circuit Court of Appeals, Second Circuit. April 7, 1914.)

No. 239.

1. ATTACHMENT (§ 261*)—DISCHARGE BY BOND—OPERATION AND EFFECT.

The discharge of the lien of an attachment by the giving of a bond to take its place, under the New York statutes, does not vacate the writ of attachment.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 929–944; Dec. Dig. § 261.*]

2. ATTACHMENT (§ 276*)—DISSOLUTION—OPERATION AND EFFECT.

The dissolution of an attachment releases the attached property, though no order of dissolution may be entered in the court where the action is pending.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 973–978; Dec. Dig. § 276.*]

3. BANKRUPTCY (§ 200*)—DISSOLUTION OF ATTACHMENT LIENS BY ADJUDICATION.

A lien acquired by attachment in a state court within four months prior to the filing of a petition in bankruptcy is dissolved by the filing of the petition under Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), providing that all levies, attachments, etc., obtained through legal proceedings against a person who is insolvent within four months prior to the filing of the petition, shall be deemed null and void in case he is adjudged a bankrupt and the property shall be deemed wholly discharged and released therefrom; the effect of that section not being confined to attachment issuing from courts of the United States.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 289, 296–300, 306–316; Dec. Dig. § 200.*]

4. BANKRUPTCY (§ 198*)—ATTACHMENT—DISSOLUTION.

An attachment was granted against a bankrupt within four months before the filing of a petition in bankruptcy to release the lien on which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a bond was given by a bonding company which insisted upon security. A. executed an indemnity of agreement to the bonding company, and the bankrupt conveyed property in trust to secure A. *Held*, that the writ of attachment should not be vacated so as to discharge the surety, though there had been no discharge of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 289, 296–316; Dec. Dig. § 198.*]

5. BANKRUPTCY (§ 391*)—STAYING PROCEEDINGS IN STATE COURTS.

Under Rev. St. § 720 (U. S. Comp. St. 1901, p. 581), forbidding injunctions staying proceedings in any state court, except where authorized by any law relating to bankruptcy, and Bankr. Act July 1, 1898, c. 541, § 11, 30 Stat. 549 (U. S. Comp. St. 1901, p. 3426), providing that a suit on a claim, from which a discharge would be a release pending at the time of the filing of the petition, shall be stayed until after an adjudication, and may be further stayed until 12 months after the date of the adjudication, or if, within that time, the bankrupt applies for a discharge, until the question of such discharge is determined, the court had no power to grant a stay for a longer period than 12 months after the date of the adjudication, where the bankrupt did not apply for a discharge within that time.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 637–655; Dec. Dig. § 391.*]

6. EQUITY (§ 62*)—MAXIMS—EQUITY FOLLOWS THE LAW.

As a general rule equity follows the law, and a person capable of holding the legal title to property is capable of holding the equitable title, while one incapable of holding the legal title is equally incapable of having a trustee hold it for him.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 183; Dec. Dig. § 62.*]

7. BANKRUPTCY (§ 163*)—VOIDABLE PREFERENCES—TRANSFERS TO SECURE SURETY.

Where a bankrupt conveyed property in trust to secure A., who executed an indemnity bond to a bonding company which gave a bond to secure the discharge of the lien of an attachment granted within four months before bankruptcy, the transfer was valid unless intended to create a preference or defraud creditors or unless the bonding company had reason to believe that such was its object, since, as equity follows the law, the trustee had the same right to hold the property in trust that the bonding company would have had had it been transferred directly to it, and there is nothing in the bankruptcy act to interfere with a creditor's right to dictate the terms on which he will part with his money or property, or demand such security as will satisfy him at the time a debt is created.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248; Dec. Dig. § 163.*]

Petition to Revise an Order of the District Court of the United States for the Southern District of New York. Affirmed.

On November 9, 1911, one Edward C. Vick commenced an action in the Supreme Court of the state of New York to recover from the Federal Biscuit Company the sum of $5,300, the amount due him as commissions on the sale of stock of the biscuit company. In that action a writ of attachment was granted Vick against the property of the biscuit company.

Thereafter an attempt was made to obtain the bonding of the attachment. Application was made to the Massachusetts Bonding & Insurance Company for such an undertaking, but the application was denied unless some reputable and responsible party would agree to indemnify the company for all loss which might ensue. It was thereupon agreed that one John A. Anger, of New York City, would execute an indemnity agreement, provided the Federal Biscuit Company would secure him. This that company agreed to do, and it accordingly transferred to a trustee all the right, title, and interest which it

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

had and might thereafter acquire in its plant at Lawrence, Mass. The trustee was to hold the same for the benefit of Mr. Anger, and, in the event of it becoming necessary to pay out any money by virtue of the indemnity agreement, he was to dispose of the property and apply so much of the proceeds as was necessary to reimburse Anger for any money he was obliged to pay under the agreement, together with his expenses and disbursements. Robert M. Richter was made the trustee, and the property was deeded to him, and he executed a declaration of trust. Subsequently he executed a second and further declaration of trust for the repayment to Anger of $589.59; that being the amount Anger had paid for rent on behalf of the Federal Biscuit Company.

No part of the rent which Mr. Anger advanced has been repaid, nor has he been reimbursed for the expenses or disbursements which he has incurred.

As a result of the foregoing agreements the attachment was released, and the property under levy was discharged.

On January 6, 1912, an involuntary petition in bankruptcy was filed against the Federal Biscuit Company, and Cornelius W. Wickersham was appointed receiver, and later was made trustee in bankruptcy of the estate; the company having been adjudicated a bankrupt on January 18, 1912.

On August 28, 1912, a motion was made in the United States District Court for the Southern District of New York for an order to vacate the warrant of attachment, to cancel the bond executed by the Massachusetts Bonding Company, to cancel the indemnity bond executed to Anger, and to direct Richter to convey to the trustee in bankruptcy the real property, which was conveyed in trust as an indemnity to Anger. The motion was granted, and with it a stay of all proceedings in the state court. From that order Vick appealed to this court, and the order was reversed, except so much of it as stayed the action in the state court. See In re Federal Biscuit Co., 203 Fed. 37, 121 C. C. A. 373 (1913.)

On August 27, 1912, a motion was again made in the District Court to vacate the warrant of attachment, to cancel the bond executed by the bonding company, and also the bond executed by Anger, as well as the trust agreement executed by Richter. This motion was denied.

R. P. Levis, of New York City, for petitioner.

Jno. M. Gardner, of New York City, for respondent Vick.

J. Deyo and Phelan Beale, both of New York City, for other respondents.

Before LACOMBE, COXE and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This court was called upon to pass upon this same motion in February, 1913. The court below had then entered an order in which it granted the relief asked, and we reversed its action in part. We then said:

"So much of the order, therefore, as grants a stay will be affirmed. We think this measure of relief all that is called for at the present time and sufficient to determine the rights of the parties. The other portions of the order are, however, set aside without prejudice to further proceedings if necessary." In re Federal Biscuit Co., supra.

The motion was a year later renewed, and this time the learned District Judge, to whom the application was made, denied the motion and said:

"In the first place, I do not see why the decision of the Circuit Court of Appeals does not require the denial of this motion. This seems to be a mere renewal, on the same facts, of the motion granted by an order of Judge Hough which was afterwards reversed by the Court of Appeals."

The appeal taken from the order denying the motion raises the question whether the facts are the same now as they were when this matter

was last before us, and, if they are not the same, whether the difference is such as to make it proper for us to modify in any respect our former action. But we have failed to discover that anything has occurred since the case was last before us which should change the conclusion we reached at that time.

[1] It is said that the attachment obtained by Vick in his suit against the bankrupt in the state court should be vacated, and it is conceded that the attachment was levied within four months of the filing of the petition in bankruptcy. The District Judge in his opinion says:

"I do not see the necessity of an order vacating the attachment in the suit in the state court brought by Vick. That attachment was vacated and discharged by the bond given to take its place by the Massachusetts Bonding Company."

It is possible that the District Judge did not have the matter clearly presented to him, and we are free to say that we do not think it was clearly presented in the argument in this court. It is important to distinguish between the discharge of the lien of the attachment by the bond given to take its place and the vacation of the writ. The two things are quite distinct, and the District Judge apparently did not have his attention called to the distinction, and it was not clearly pointed out in the argument before us. The bond given by the Massachusetts Bonding Company bonding the attachment in the suit in the New York Court was authorized under the New York statutes, and the purpose of the statute as explained in Christal v. Kelly, 88 N. Y. 285, 292 (1882), by Chief Judge Andrews was the following:

"It was intended for the benefit of defendants whose property had been, or might be, attached under process, to enable them to substitute, for the property which had been or might be attached, security for the payment of any judgment which might be recovered in the action, and thereby relieve their property from the actual or apprehended lien of the process."

[2] And the effect of the dissolution of an attachment is to release the attached property, though no order of dissolution may be entered in the court where the action is pending.

[3] A lien acquired by an attachment of an insolvent debtor is a lien "obtained through legal proceedings" and is, by the express terms of the Bankruptcy Act, § 67f, dissolved by the filing of a petition in bankruptcy by or against the debtor, if that occurs within four months after its date. And the effect of the statute in dissolving attachments is not confined to those issuing from courts of the United States, but applies as well to the process of the state courts. See Black on Bankruptcy, § 376, and Bank of Columbia v. Overstreet, 10 Bush (Ky.) 148. The discharge of the lien of attachment is one thing, the vacation of the writ is another. The discharge of the lien does not necessarily vacate the writ. See King v. Block Amusement Co., 126 App. Div. 48, 111 N. Y. Supp. 102 (1908), affirmed 193 N. Y. 608, 86 N. E. 1126. The question whether the writ shall be vacated is important as affecting the liability of the surety.

[4] The question whether the writ of attachment should be vacated was considered in the New York case above cited. It was decided in the Appellate Division of the Supreme Court, and affirmed by the Court

of Appeals, that a warrant of attachment issued within four months of the filing of a petition in bankruptcy against defendant and discharged by an undertaking for which the surety takes no security would not be vacated after the adjudication in bankruptcy so as to discharge the surety. We think the same ruling should be applied under the facts of the case at bar, although in this case there has been no discharge of the bankrupt, and property of the bankrupt is held in trust for the indemnity of the surety.

[5] The statutes of the United States prevent the courts of the United States from issuing injunctions to stay proceedings in any court of a state except in cases "where such injunction may be authorized by any law relating to proceedings in bankruptcy." Revised Statutes U. S. § 720 (U. S. Comp. St. 1901, p. 581). And it is provided in the Bankruptcy Act, § 11, that:

"A suit which is founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of a petition against him shall be stayed until after an adjudication or the dismissal of the petition; if such person is adjudged a bankrupt, such action may be further stayed until twelve months after the date of such adjudication, or, if within that time such person applies for a discharge, then until the question of such discharge is determined."

In pursuance of this provision of the Bankruptcy Act the United States District Judge for the Southern District of New York on September 25, 1912, issued an order staying Vick, his attorneys and agents, from taking any further action in the suit in the courts of the state of New York. That stay was for an indefinite period. But under the statute it is not within the power of the court to grant a stay for a longer period than 12 months after the date of the adjudication of bankruptcy except in cases where the bankrupt applies for a discharge. If he has made no application for a discharge, and the time has passed within which an application can be made, there evidently is no right longer to restrain the proceedings in the state court, and, upon the facts being properly brought to the attention of the District Court, that court should vacate the stay previously granted. But while it was stated in argument that the bankrupt has never been discharged, and that the matter of his discharge is not pending, and that he has not even applied for a discharge, there is nothing in the record before us to show these facts.

[6, 7] As a general rule equity follows the law. If a person is capable of holding the legal title to property, he is capable of holding the equitable title. If he is incapable of holding the legal title, he is equally incapable of having a trustee hold it for him. The principle is illustrated by the decisions under the statutes of mortmain. The courts held that the statutes could not be evaded by giving a legal title to a trustee to hold for a corporation. See Perry on Trusts, § 63; Lewin on Trusts, 36. The same principle is illustrated in the law relating to aliens. If a subject held a legal title to land for an alien cestui que trust, the crown could at any time claim the equitable interest. Vin. Ab. Alien, A, 8; Dumoncel v. Dumoncel, 13 Ir. Eq. 92; Barrow v. Wadkin, 24 Beav. 1. We find another illustration in the law relating to slaves. The courts held that, if a slave could not himself hold prop-

erty, it could not be held for him by a trustee. Skrine v. Walker, 3 Rich. Eq. (S. C.) 262; Pool v. Harrison, 18 Ala. 514. A different principle was applied in the case of charitable trusts, but that exception to the rule is without bearing upon the question with which we are now concerned. Applying the principle first stated to the facts of this case, it would seem to follow that the trustee Richter's right to hold the property in trust is exactly the same as would be the right of the bonding company to retain the property from the trustee in bankruptcy, if the property had been transferred directly to it by way of securing it against the possibility of loss or if it had been transferred directly to Anger to secure him. If either Anger or the bonding company would have been entitled to hold, then Richter it would seem would be entitled to hold, otherwise not. But if the real estate transferred to Richter had been transferred directly to the bonding company, the transaction would have been valid, unless the trustee in bankruptcy proved that the transfer was intended to create a preference or to defraud creditors, or that the bonding company had reason to believe that that was the object of the conveyance. The Bankruptcy Act, § 67, provides that:

"All conveyances, transfers, assignments, or incumbrances of his property or any part thereof, made or given by a person adjudged a bankrupt * * * within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration."

And the act goes on to provide that property so transferred shall remain a part of the assets of the bankrupt, and it is made the duty of the trustee to reclaim the same for the benefit of the creditors. The act also provides against the transfer of property by an insolvent within four months of the filing of the petition in bankruptcy, if the transfer operates as a preference and the person recovering it or to be benefited thereby, or his agent acting therein, had reasonable cause to believe that the enforcement of the transfer would effect a preference.

There is no evidence in the record which establishes the fact that the transfer of the property to Richter to secure Anger, and thus secure the bonding company, was invalid either under the provision which avoids transfers made to hinder and delay creditors or under the provision relating to preferences.

We understand that a suit brought by the trustee is now pending in a court in Massachusetts to set aside the transfer to Richter. What evidence the trustee may have to invalidate the transfer he will undoubtedly present to that court. It has not been presented to the District Court and therefore is not before us. We are therefore unable now, as we were unable when the case was last before us, to see why the court below should order a cancellation of the bond executed by the bonding company, or a cancellation of the bond executed and delivered by Anger to the bonding company, or a cancellation of the trust agreement executed by Richter to secure Anger. There is not in the record any evidence of positive fraud or bad faith on the part of the bonding company or of Anger or of Richter. There is no evidence that the transfer of the real estate to Richter was intended to create a

preference or to defraud creditors. The transfer of the property to Richter to secure Anger, and Anger's agreement with the bonding company and that company's agreement with Vick were all contemporaneous acts. The security related to a present and not a past transaction, and there was a present consideration to support each one of the agreements. At a time when a debt is created the creditor has the right to dictate the terms on which he will part with his money or property, and he may demand that he shall be first secured to such an extent as will satisfy him.

It has been held that there is nothing in the Bankruptcy Act to interfere with the exercise of that right. In re Busby (D. C.) 124 Fed. 469. And it seems to be a settled principle of bankruptcy law, both in the United States and in England, that advances made in good faith to a debtor to assist him in his business do not violate either the terms or the policy of the Bankruptcy Act. See Darby v. Boatmen's Saving Inst., 1 Dill. 141, Fed. Cas. No. 3,571.

The order is affirmed, but without prejudice to further proceedings, if necessary.