## PELL et al. v. McCABE et al.

### (District Court, S. D. New York. October 21, 1918.)

1. BANKRUPTCY ⚫391(3)—FEDERAL COURTS—STAY OF SUITS AGAINST BANKRUPT.

The power of a bankruptcy court to stay suits against the bankrupt is expressly confined to the period before determination of discharge proceedings, and a District Court can have no wider power to stay suits in a state court on an auxiliary bill dependent upon the bankruptcy proceedings.

2. INJUNCTION ⚫26(5)—RESTRAINING ACTION—ADEQUATE REMEDY AT LAW.

A debtor, released from his debts by the judgment of a court having jurisdiction, to avail himself of the judgment when sued upon a prior debt, may plead it as a defense, and it affords no basis for an injunction to stay the action.

3. EQUITY ⚫51(3)—MULTIPLICITY OF SUITS—BILL "QUIA TIMET."

A bill "quia timet" is very limited, and goes to protect an existing possession which has been already established once after an attack at law, and which is again threatened, thereby threatening such a multiplicity of suits as equity will recognize.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Quia Timet.]

In Equity. Suit by Stephen H. P. Pell and others against W. Gordon McCabe, Jr., and others. Decree for defendants.

Emanuel J. Myers, of New York City, for plaintiffs.
William St. John Tozer, of New York City, for defendants.

LEARNED HAND, District Judge. This complicated bill of complaint raises a number of questions which I do not find it necessary to determine. For example, had the bankruptcy court any jurisdiction whatever in the order of composition to do more as to Thompson than to settle claims against the estate? If it had such jurisdiction, did it attempt to exercise it quoad Thompson's creditors, who did not formally accept the composition? Could a composition in any case affect the rights of creditors of Thompson, who was not a bankrupt, who offered no composition, and whose creditors were not before the court? If so, could it affect creditors not mentioned in the schedules, who did not know of the existence of their claims, because they had not yet discovered a fraud practiced upon them by the bankrupts and Thompson? These questions all go to the effect of the order or decree

of January 25, 1915, and as, in the view I take, that order must be pleaded in bar in South Carolina, it is obviously more orderly to avoid any discussion of them beyond the caution that my silence must not be taken as intimating that I should answer any one of them in the plaintiff's favor. Similarly, I pass the question whether this bill is within the ancillary jurisdiction of a court of bankruptcy, or of the District Court as ancillary to the court of bankruptcy.

[1] That the bill cannot succeed as to the bankrupts is too clear to justify much discussion. They got a discharge under the order of confirmation, and that discharge is a bar to certain of their debts, under section 17. The power of bankruptcy courts to stay suits brought against the bankrupt on dischargeable debts is regulated by section 11a, and is expressly confined to a period up to the determination of the discharge proceedings. In re Federal Biscuit Co., 214 Fed. 221, 225, 130 C. C. A. 635. By no "auxiliary bill" dependent upon the bankruptcy proceedings does the District Court get a wider power to stay suits in a state court than it would have had as a court of bankruptcy. Indeed, I do not understand that the plaintiffs so contend. As to the bankrupts, the bill must in any event be dismissed.

[2] As to Thompson the position, if I understand it, is this: The bankruptcy court, having jurisdiction to release Thompson of his debts, undertook to do so. That release, being an adjudication, is property, property within the jurisdiction of the court, and the court by ancillary bill will protect it from attack elsewhere by injunction. As I have said, I shall treat the order as though it effectively released Thompson from such a claim as that set up in the South Carolina action. The first question is whether a judgment releasing a debtor can be the basis of a subsequent suit to enjoin the debt. That, I take it, is at most only one form of the general question whether the plaintiff has an adequate remedy at law. I do not mean that it presents the case as strongly as where there has been a judgment upon a claim sued on and a merger, but only that it is no better for the plaintiff than such a situation. Normally, when any defense is available at law, he must plead it there. Grand Chute v. Winegar, 15 Wall. 373, 21 L. Ed. 170. And this applies as well to the defense of discharge of the liability as to any other defense. Fowler v. Palmer, 62 N. Y. 533; Saunders v. Huntington, 166 Mass. 96, 44 N. E. 127. The same rule generally applies when the defense is of merger or estoppel by judgment. Chicago, etc., Co. v. Chicago, 143 Ill. 641, 647, 32 N. E. 178; Palmer v. Hayes, 93 Ind. 189; Gray v. Coan, 36 Iowa, 296; Bowen v. Gent, 54 Md. 555; B. & O. R. R. Co. v. Latimer, 118 Md. 183, 84 Atl. 377; Chicago, etc., Co. v. St. Joseph, etc., Co. (C. C.) 92 Fed. 22, 26. Now, it is, of course, true that the right to plead in bar may not be sufficient; so much was indicated in Foltz v. St. Louis, etc., R. Co., 60 Fed. 316, 322, 8 C. C. A. 635, where the point was not raised in time. Field v. Early, 167 Mass. 449, 45 N. E. 917, partook of the nature of an interpleader.

[3] A bill quia timet is in this last category, and the plaintiffs seem to suppose that this is such; but a bill quia timet is a very limited affair. It goes to protect an existing possession, which has been al-

ready established once after an attack at law, and which is again threatened. In such a case there is threatened such a multiplicity of suits as equity will recognize. Here there has never been any suit at all between the parties; at best the defendants are concluded by some kind of vague constructive consent, or whatever it may be. There is no property in possession of the plaintiffs, whose title has already been assailed and defended; there is no threatened repetition of any issues ever litigated before. It escapes me upon what possible theory it is supposed that bills quia timet are pertinent.

The same observations apply to those other cases cited in quantity under which courts have protected property once in their custody from becoming the subject of litigation elsewhere. It is not necessary to consider them in detail for they are endless, but they all rest upon the custody, actual or prospective, of a court. Now, a release is not property, and, if it were, it would not, under these circumstances, be property of which the court has taken custody for the purpose of distribution. The mere statement of the supposed analogy shows how remote it is. Whatever rights Thompson got were to be used like a discharge, wherever he was sued. There is no possible reason why his supposed release should stand upon any different footing from the discharges in bankruptcy. And there is no escape from the conclusion that, if this court draw to itself under the guise of an ancillary jurisdiction, every litigation, wherever it occurs, which may be commenced against Thompson, the bankruptcy proceedings can never come to a conclusion.

Seeing no ground for equitable intervention, even if all be true that the plaintiffs allege, it follows that the bill is without equity, and as such it will be dismissed, with costs.